## LORA L. MOSS, Appellant, v. WILLIAM M. FITCH et al.

Division One, May 30, 1908.

1. **JURISDICTION: Resident of Another State: Personal Service: Alimony.** No process issued by a court of this State, and personally served on a defendant in another State, can be the basis of a personal judgment. So that where plaintiff brought suit for divorce against her husband who was at the time in Wyoming and he was personally served with summons in that' State, but not in this State, and did not enter his appearance, the court had jurisdiction to enter a decree granting plaintiff

a divorce, but no jurisdiction to award her a general judgment for alimony, even though he had property in this State. The substituted service provided for by Sec. 582, R. S. 1899, is of no broader legal scope than service by publication provided for by section 575, and service in either mode only gives the court jurisdiction over the *res*, which in a suit for divorce, without asking for a special judgment against specifically described property, is the divorce, the marital relation, the status of the plaintiff in relation to the defendant. [Disapproving certain observations on this point in Hamill v. Talbott, 72 Mo. App. 22, and 81 Mo. App. 210.]

2. ———: ———: ———: ———: **Citizen of this State.** And this is the ruling, whether the defendant, personally served with process in another State, is in fact a citizen of this State or of the other State. Whenever process of a State court crosses the State line it loses its validity as an instrument upon which a general personal judgment can be entered.

3. **DEED OF TRUST: Redemption: Not Pleaded Except in Reply: Dower.** Where the petition was a bill in equity to cancel two conveyances on the ground that they were fraudulent and on the further ground that one of them, a deed of trust, had been paid, and there was no allegation in the petition tending to indicate a purpose to redeem, the court cannot permit plaintiff, who had been divorced for the fault of her husband and had left her inchoate right of dower, to redeem the property from a deed of trust made by her and him. No cause of action to redeem is stated in such a petition. And the right to redeem being stated for the first time in the reply, it is inconsistent with the petition, and must be regarded as surplus matter. Plaintiff must recover on the cause of action stated in the petition or not at all.

4. ———: **Fraudulent Foreclosure.** Mills owned two tracts of land, one of which was a homestead, and he and his wife executed a valid deed of trust thereon. Thereupon plaintiff, the wife, secured a divorce and about that time Mills conveyed the lands by quitclaim deed to Ekin, to whom Mills was indebted, and who was about to attach his lands. Landis bought the deed of trust notes, paying his own money therefor, but bought for Lahrman, who soon repaid Landis. Then the deed of trust was foreclosed and Landis bought in the land for Ekin, who was a client of Landis, but Lahrman knew nothing of Mills and Ekin. *Held,* that no fraud upon the rights of plaintiff was shown, and the foreclosure sale cannot be set aside.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Hewitt & Hewitt* and *James T. Blair* for appellant.

(1) Plaintiff had an interest in all the lands in question, notwithstanding the fact that she had been granted a divorce from the defendant, Oliver G. Mills. The decree of divorce did not bar her dower. R. S. 1899, sec. 2947; White v. Ingraham, 110 Mo. 483; Blandy v. Asher, 72 Mo. 27; Turner v. Bennett, 70 Ill. 263. (2) The deed from Mills to Ekin was absolutely void, under section 3616, Revised Statutes 1899. The unlawful design cannot be confined to one particular parcel of property; entire honesty and good faith are necessary to render the instrument valid. The taint as to part makes the whole void. Bump on Fraud. Conv. (3 Ed.), pp. 486, 487, 488; Bank v. Fry, 168 Mo. 520; State ex rel. v. Hope, 102 Mo. 410; Newberry v. Harper, 97 N. W. 438; 14 Am. and Eng. Ency. Law (2 Ed.), 252. (3) Courts of equity will set aside a sale under a deed of trust where the trustee has been guilty of fraud, partiality or misconduct. The trustee in this case was antagonistic to the plaintiff and owner of the equity of redemption, viz.: He was the attorney for the holder of the debt; he was advising and consulting against the plaintiff's interest; he refused to collect any part of the $2,000 bid for the land; he refused to collect or hold the surplus over and above the amount of defendant Lahrman's debt, which surplus amounted to more than $700; he refused to accept the amount of the debt, interest and cost before the sale, or even knock the land down to the holder of the equity of redemption at her bid, amounting to the entire debt, interest and cost of sale, including commission. Dunn v. McCoy, 150 Mo. 548; Pollihan v. Perclay, 181 Mo. 622; Howell Co. v. Burroughs, 180 Mo. 642; Kelsay v.

Bank, 166 Mo. 173. (4) A trustee in exercising his duties and powers under a trust deed is trustee for the debtor, and he is bound to act in good faith; it is the duty of the trustee to pursue the course which will inure most to the benefit of the debtor. Good v. Comfort, 39 Mo. 325; Chelsea v. Chelsea, 49 Mo. 542; Tatum v. Holliday, 59 Mo. 428; Kelsay v. Bank, 166 Mo. 173. (5) The allegations of the plaintiff's bill stand as confessed by defendant Mills, under the judgment by default. There can be no valid distinction between a judgment confessed and one tried and determined. A judgment by default is as conclusive as one upon verdict. Williams v. Iron Co., 30 Mo. App. 665; judgment by default, 24 Cent. Law J. 27; Yates v. Preston, 41 N. Y. 113; Phillips on Evidence, p. 270, note. (6) The petition distinctly charges conspiracy and fraud upon defendant Ekin, and notwithstanding the fact that he filed an answer denying said charges, he failed to appear and testify in said cause, or give his deposition in the cause, and failed to disclose his whereabouts to the plaintiff so that she might take his deposition, and the evidence shows that there was a studied effort on the part of defendant Landis and Ekins, attorney and representative, from the time of the quitclaim deed, purporting to have been made by Mills to Ekin, to withhold such knowledge, down to the trial of said cause. This must be regarded as a strong circumstance against both Ekin and defendant Landis. Mabary v. McClurg, 74 Mo. 575; Ins. Co. v. Smith, 117 Mo. 261; Baldwin v. Whitcomb, 71 Mo. 658; Bent v. Lewis, 88 Mo. 462. (7) Defendants undertake to question the validity of the judgment for alimony, and in doing so, inject a constitutional question, and assail the statute, section 582, Revised Statutes 1899, which declares that judgment rendered against defendant upon "service of process in conformity with said section shall be as effectual within the limits of this

State, as personal service within this State, and judgments rendered against defendants thus served shall have the same effect and force within the limits of this State as judgments rendered against defendants personally served with summons in this State." Defendants cannot be heard to question the constitutionality of this statute, unless they show that some right of theirs is impaired, or prejudiced thereby, for only those whose rights will be prejudiced by the enforcement of an unconstitutional act will be heard to question its validity. 6 Am. and Eng. Ency. Law (2 Ed.), 1090; State v. Seebold, 192 Mo. 730; State ex rel. v. McIntosh, 205 Mo. 602. (8) Defendant Ekin's quitclaim deed from Mills being absolutely void, he has no right in the lands in question which may be impaired or prejudiced by the plaintiff's judgment, and therefore has no right to complain. (9) Mills, the principal defendant in this case and the prime instigator and mover in all these fraudulent transactions charged in the bill, confesses the truth of the allegations. He also confessed the allegations of the petition for divorce in evidence, upon which service was had of the petition and summons issued upon an affidavit alleging that he had absented himself from his usual place of abode in this State so that the ordinary process of law could not be served upon him. There is no evidence that Mills was not a resident of this State at the time of the service had upon him, and he would not be in a position to take advantage of the judgment for alimony and the execution and sale of the land under said judgment, himself. The distinction which we desire to make arises from the citizenship of the party sought to be charged by the judgment. If he was a citizen of this State at the time of the service, he was amenable to the laws of this State. The fact of his being temporarily absent in another State at the time of the service would give him no

right to assail the statute. He being a citizen of Missouri, this State had a right to prescribe by law how its citizens shall be brought into court. It would be otherwise, however, if he were a citizen in a foreign State. Hunt v. Baker, 33 Hun 578; Beard v. Beard, 21 Ind. 321; Cassidy v. Leitch, 2 Abb. N. C. 315; Gillispe v. Ins. Co., 12 Gray 201; Black on Judgments, sec. 907.

*Spencer & Landis* and *Wm. M. Fitch* for respondents.

(1) It is incumbent upon the party alleging fraud to prove the same; it is never presumed. The failure of Ekin to testify does not change this rule. Hoeller v. Haffner, 155 Mo. 589. (2) Plaintiff cannot abandon his petition by setting up a reply containing a new or different cause of action from that contained in the petition. Therefore, the trial court properly held the question of plaintiff's right to redeem was not in issue under the pleadings. Stepp v. Livingston, 72 Mo. App. 179; Jackson v. Powell, 110 Mo. App. 252; Haynor v. Excelsior Springs, 108 S. W. 580. (3) Personal service executed beyond the borders of this State has the force and effect of service by publication only, consequently a personal judgment for alimony with such a service is void, as the court was without jurisdiction to render the same. Hedrix v. Hedrix, 103 Mo. App. 40; Murdock v. Hillyar, 45 Mo. App. 287; Gould v. Crow, 57 Mo. 575; Russell v. Grant, 132 Mo. 161. And there is no law supporting the attempted distinction made by appellant as to whether defendant Mills in the divorce proceeding was in fact a resident or a non-resident. (4) The court found that the proceeds from the notes at the bank, when paid, were promptly applied on the $1,600 indebtedness. The testimony of Mr. Jones, the banker where they were deposited, was that these notes were placed as collateral to secure

the $1,600 note; hence, the proceeds could not have been properly applied elsewhere. In addition to that, if there was no agreement as to where it should be applied, the party taking it as security would have the right to apply it to his own advantage. McMillan v. Grayston, 83 Mo. App. 425; Thorn v. Hunkins Lime & Cement Co., 158 Mo. 272. (5) A suit to redeem from a foreclosure sale can only be brought in case the mortgagor has complied with the provisions of the statute with reference to the giving of security. Sturgeon v. Mudd, 190 Mo. 209. (a) Nothing short of the tender of the debt and costs before sale would be sufficient to stop the foreclosure sale. Snow v. Bass, 174 Mo. 149. (b) And in order to defeat a sale, this tender must be kept good. Hudson Bros. Com. Co. v. Glencoe Sand & Gravel Co., 140 Mo. 103.

GRAVES, J.—Action for injunction and for the cancellation of a certain quitclaim deed and a certain deed of trust.

From December 2, 1900, to October 23, 1902, the plaintiff was the wife of defendant Oliver Grant Mills, by whom she had one child. At this latter named date she was divorced from Mills and had judgment for alimony in gross in the sum of $2387.50, and for custody of the child. Judgment was by default. In this divorce proceeding the defendant Mills was not served with process in this State, but was personally served with summons in the State of Wyoming, under our statute providing for such a service. Prior to the marriage Mills was the owner of seventy-five acres of land in DeKalb county. After the marriage he purchased from Sarah R. Ross et al. for a home for himself and wife a ten-acre tract of land, for $2,000, upon which there was an incumbrance of $400 due to James Ewart from Ross. In order to pay for this ten-acre tract Mills borrowed $1,600 from the said Ewart. To secure this

last-named sum Mills and plaintiff, his then wife, executed a note and deed of trust, which covered both tracts of land. A. B. Chrisman was the trustee in this deed. Later Mills, by quitclaim deed, prior to the divorce, but about the time thereof, conveyed all the property to defendant Ekin. This deed was acknowledged before a notary public in Wyoming. Defendant William M. Fitch was the successor in trust of Chrisman. After the judgment for alimony was entered plaintiff caused execution to be issued and all the land sold and the same was bought in by her prior to the institution of this suit.

The petition sets out most of the facts herein above stated. It then charges a conspiracy to defraud her and other creditors of Mills as having been entered into between Mills and Ekin, a resident of Wyoming, when the quitclaim deed was made, and charges said transaction as a fraud, and that Ekin really held the property for Mills. The remainder of the petition and the prayer thereof is as follows:

"That thereafter, to-wit, on the — day of March, A. D. 1903, the trust deed hereinbefore mentioned, as having been executed by defendant Mills and this plaintiff to A. D. Chrisman for use of James Ewart, being still outstanding and in the hands of said Ewart and being then and there a legal debt and liability in the sum of twelve hundred and thirty-five dollars, and no more, of and against said Oliver G. Mills, defendant; that said Mills in the further prosecution of his fraud against this plaintiff and toward the consummation of his wicked, wrongful and fraudulent design against the lawful right of this plaintiff, conspired with the defendant Lahrman and Landis to aid and assist him, the said Mills, whereby the said Lahrman and Landis, for a consideration to be paid by said Mills to said Lahrman and Landis, agreed to take the money which said Mills then and there promised to furnish suffi-

cient to discharge the trust deed and debt hereinbefore mentioned, due and owing to said James Ewart as aforesaid, and purchase said debt and security from said Ewart, and take a pretended assignment thereof in the name of said Lahrman, and foreclose said trust deed and turn the proceeds from said sale over to said Mills and then and thereby defeat the lawful rights of plaintiff and defraud her of the title to said lands.

"Plaintiff says that in pursuance of and toward the fulfillment of said agreement and consummation of said fraud, said Landis paid said money to said Ewart and took said security in the name of said Lahrman, and the said Lahrman, toward the fulfillment of his unlawful, wicked and fraudulent agreement, is now pretending to be the lawful owner of said debt and security aforesaid; and in the further prosecution of said wicked and fraudulent and unlawful agreement so entered into as aforesaid between said Lahrman, Mills and Landis, said Lahrman, under and by virtue of the authority vested in the trustee, and his successors in trust mentioned in said trust deed, has appointed one William M. Fitch as successor in trust to said Chrisman, and said Fitch as said trustee is, at the instance and request of said Lahrman, the pretended owner of said debt and security, threatening to sell all of said lands under said trust deed, and is now advertising said lands for sale in the DeKalb County Democrat, a newspaper printed and published in the city of Maysville, DeKalb county, Missouri, as will more fully appear by a copy of said advertisement hereto attached, marked 'Exhibit B' and made a part hereof, and will, if not restrained from so doing, sell said lands on the 31st day of August, A. D. 1903, and then and there and thereby cast a cloud upon the title of this plaintiff's said lands, and irreparable injury and damage would thereby result to this plaintiff.

That she is without adequate and efficient remedy at law.

"Wherefore, plaintiff prays that a restraining order and injunction be issued directed against said Wm. M. Fitch, trustee as aforesaid, and defendant Lahrman and each of them and that they and each of them, their agents and representatives be enjoined and restrained from making said sale, or selling, assigning or disposing of said debt and security or in doing anything further in the premises toward the consummation of their fraudulent acts, until this cause can be heard upon its merits, and that upon a hearing of said cause, said injunction and restraining order may be made perpetual and the aforesaid quitclaim deed be declared null and void, held for naught, and that said debt mentioned and described in the trust deed be declared paid off and discharged and the lien of said trust be declared discharged and satisfied and held for naught and for all such other orders, judgments and decrees granting relief as shall be meet and proper in the premises."

Defendants Fitch, Lahrman, Ekin and Landis file answer in which they say:

1. They admit the marriage of plaintiff and Mills on the date alleged.

2. They deny that there has been a legal dissolution of the marriage, because of certain defects in the proceedings not necessary to mention at this point.

3. They aver the judgment for alimony to be void.

4. They admit that Mills at one time had title to all the property described.

5. They admit the execution of the deed of trust as pleaded, and aver that it is a subsisting lien upon the land, and in this connection further say: "These defendants further answering expressly deny that said Lahrman and Landis, or either of them, assisted the

said Oliver G. Mills, directly or indirectly, to pay off the said note secured by said trust deed; but that defendant Landis himself purchased the said note from James Ewart, for value received, out of his own funds; that afterwards he assigned the said note to said Lahrman, for value received, and that the said Lahrman then became the absolute owner thereof, and that neither the said Mills nor the said Ekin had any interest in the said note whatever.''

6.   They aver that A. B. Chrisman refused to act as trustee and that under the power granted by the deed of trust Lahrman appointed defendant Fitch as trustee, who advertised and sold the premises, and that defendant Ekin, being the highest and best bidder, became the purchaser at the sale.

7.   They admit that the execution sale was made and that deed was made to plaintiff, but aver that the judgment execution and all proceedings thereunder were void and that plaintiff in trying to enforce said judgment is doing so in violation of section 1, of article 14, of the United States Constitution and of the Constitution of Missouri, and the laws of this State.

8.   They admit the record of plaintiff's deed and aver it casts a cloud on the title of defendant Ekin.

9.   Defendant Ekin expressly denies that the quitclaim deed was fraudulent, or voluntary or without consideration, or was made in pursuance of a conspiracy to injure or defraud plaintiff, but avers that it was made in good faith and for a valuable consideration.

10.   All things not expressly admitted were expressly denied by all the defendants.

The prayer of the answer is as follows:

''Wherefore, these defendants pray this honorable court to set aside and for naught hold the judgment rendered against defendant Mills and in favor of plaintiff, which is alleged in plaintiff's bill and in this an-

swer, and that the deed from William Duncan as
sheriff herein and in the said bill referred to, be
cancelled and for naught held, and that the quitclaim
deed from Mills and Ekin, herein and in said bill re-
ferred to, be held good, and that the said trust deed,
and the foreclosure sale thereunder and trustee's deed
executed thereon, be confirmed and made valid and
binding on all concerned; and that plaintiff's said bill
be dismissed and for naught held, and for their costs
herein laid out and expended, and for all other relief,
orders and decrees meet and proper in the premises.''

There was a motion to strike out a part of the
answer, but nothing seems to have been done with
it, and plaintiff filed reply, the substance of which
was:

1.   General denial of all allegations of new matter
and a prayer for judgment as in the petition prayed.

2.   That if the allegation in the answer be true,
that Lahrman purchased the note secured by the deed
of trust, and that neither Mills nor Ekin had any
interest therein, ''the said Lahrman was an inter-
meddler and not therefore entitled to the relief prayed,
nor for any relief, and it would be inequitable and
unjust to permit said defendant Lahrman to retain
title obtained by the foreclosure of the deed of trust,''
and then the plaintiff asks to be permitted to redeem
upon the payment of the note, interest, and costs,
including expenses of foreclosure, and that she have
reasonable time in which so to do, and for all proper
relief.

It should be stated here that no temporary in-
junction was granted because plaintiff failed to give
a $600 bond therefor as required by the court and
the sale under deed of trust took place prior to the
trial.

The court *nisi* at request of plaintiff made a find-
ing of facts in these words:

"The court finds that on the — day of — — —
Oliver Grant Mills was the owner of and had the fee-
simple record title to the property in question, and
that on the 18th day of July, 1901, he executed a
deed of trust on said property to one A. B. Chrisman
as trustee for James Ewart for the sum of $1,600,
executing his note therefor, and that his wife, Lora
Mills, joined with her husband in the execution of
the said deed of trust, also the note given in the sum
of $1,600.

"That on the 18th day of July, 1901, the said
Oliver Grant Mills and wife, Lora L. Mills, executed
a deed of trust to one James Ewart upon the following
described real estate, being all the real estate in suit
in 'Exhibit A;' and that the said Oliver Grant Mills
by himself and without his wife Lora Mills joining
with him in the deed, executed a quitclaim deed to
James K. Ekin on the 24th day of March, 1902, upon
the following described lands, being all the lands in
suit. The court finds from the facts and from the
record in this case that the said Oliver Grant Mills
executed a quitclaim deed to James K. Ekin fraudu-
lently and for the express purpose of cheating and
defrauding this plaintiff, and his creditors; the court
does not find from the evidence that said James K.
Ekin, or any of the other defendants herein, joined
in or participated in said fraud, but finds the other
parties connected with this transaction were not guilty
of any fraud in regard to the transfer of the said real
estate. The court further finds that the aforesaid
deeds of trust were executed regularly and in a legal
way and that there was no fraud in the transaction.
The court further finds that at the sale of the said
real estate the plaintiff herein, through her attorneys
and agents, offered to redeem said property by paying
the debt and interest as set up in plaintiff's reply,
but the court determines that the plaintiff cannot ask

for that relief in a reply. The court finds that in all other respects the sale of the said real estate was conducted in a legal way. The court further finds that this plaintiff was divorced from her first husband, Oliver Grant Mills, in this court on the 23d day of October, 1902, and that the service in said case was personal service upon defendant in the State of Wyoming, and that judgment was rendered in said case for alimony in the amount of $2,387.50.

"The court further finds that the court was without jurisdiction to enter up judgment for alimony in said divorce case. The court further finds that upon the judgment rendered in said divorce case an execution was issued out of this court and levied upon the lands in question and sold under said levy, and that the purchasers at said sale who purchased the lands under the judgment for alimony in said case acquired no title, as the court was without jurisdiction to enter alimony in said case."

Judgment was entered dismissing the plaintiff's bill and adjudging the costs against her, from which, after unsuccessful motion for new trial, plaintiff has appealed.

I.   To determine just where the plaintiff stands in this case we take up two preliminary questions. First, what is the status of the judgment for alimony under which the plaintiff, on execution sale, purchased the property? To our mind, whatever may be the rule in other States, the rule is firmly established in this State that no personal judgment can be had on process of this State, executed outside of the State, or upon service by publication. The service provided for by section 582, Revised Statutes 1899, is a substituted service for that of the service provided for in sections 575 et seq., which last sections provide for orders of publication. To our mind the Legislature had no in-

tent of giving the service in section 582 a broader scope than that of publication, but was simply providing another method of accomplishing the same thing, i. e., giving some kind of a notice that the court had seized the *res,* whether that *res* was property or the marriage status, and would proceed to determine the rights of the parties in and to the *res,* which was within the jurisdiction of the court. There is no purpose in either service to acquire jurisdiction of the person so as to enter a personal judgment.

In the early case of Smith v. McCutchen, 38 Mo. l. c. 417, this court said: "No sovereignty can extend its powers beyond its own territorial limits to subject either persons or property to its judicial decisions. Jurisdiction must be founded either upon the person of the defendant being within the territory of the sovereign where the court sits, or his property being within such territory; for otherwise there can be no sovereignty exerted, upon the known maxim, *Extra territorium jus dicenti impune non paretur.* Even, therefore, should a Legislature of a State expressly grant such jurisdiction to its courts over persons or property not within its territory, such grant would be treated elsewhere as a mere attempt at usurpation, and all judicial proceedings in virtue of it held utterly void for every purpose. [Story, Confl. L., sec. 539.] A judgment obtained against a party who has no notice is void. It is unnecessary to cite adjudged cases in support of principles so well settled as these."

Following this is the case Latimer v. Railroad, 43 Mo. l. c. 109, where WAGNER, J., said: "The well-established and settled principle is, that to give a court jurisdiction, a real defendant, against whom the plaintiff is entitled to a judgment, must be found and served with process within the limits of the jurisdiction; or some property or chose in action of his must be found there upon which the court can proceed *in rem.* Every

attempt on the part of one nation or State, by its Legislature, to grant jurisdiction to its courts over persons or property not within the territory, is regarded elsewhere as mere usurpation; and all judicial proceedings in virtue thereof are held utterly void. This proceeds upon the known maxim, *'Extra territorium jus dicenti impune non paretur.'* [Story Confl. Laws, sec. 539.]''

Again, in a case very much like the one at bar, the case of Ellison v. Martin, 53 Mo. 1. c. 578: ''A judgment on order of publication can only be given in proceedings *in rem.* A divorce suit is a proceeding *in rem;* and the *res* is the *status* of the plaintiff in relation to the defendant, to be acted on by the court. This relation being before the court in the person of the plaintiff, the court acts on it, and dissolves it by a judgment of divorce. But there was nothing before the court to act on in regard to alimony in this case. Whether property can be brought before the court by describing it in the petition, and demanding a judgment *in rem* for alimony, is a question we are not now called upon to decide. This judgment was a general judgment *in personam,* and such judgments cannot be rendered in this State merely on publication of notice.'' In this case Parmelia Martin had sued her husband, French Martin, for divorce and alimony. The service was by publication. Judgment went for divorce and alimony and under the judgment for alimony an execution was issued and the land sold to Ellison. This court declared both the judgment and deed void.

And later, SHERWOOD, J., in the case of Wilson v. Railroad, 108 Mo. 588, reviews all the authorities. There the process, for such Judge SHERWOOD holds it to be, was a notice and motion which was personally served in New York, in a proceeding in Missouri. In that case the learned judge said: ''It will not be intended that the statute authorizes such a method of

service as that on which plaintiff relies; but if the statute did, in terms, require the personal service of such notice outside of the State on a non-resident in order to the rendition of a personal judgment, or its equivalent, on a money demand, such statute would be wholly void as to such extra-territorial service. It scarcely requires to be stated that this position is sustained by abundant authority; indeed, it seems to be questioned by none." On page 600, he further says: "But, for reasons already given, such service, though personal, was valueless, because made outside of our jurisdiction." And further on in the opinion, he says: "Any process, whether notice, writ or motion, which when served upon a party will have the effect to authorize an order or judgment *in personam* against him, upon the rendition of which a general execution may issue, leviable upon all the property in the State of which he may be possessed, cannot be regarded in any other light, so far as that party is concerned, than as an independent proceeding. Were such a party sued in another form of action, no doubt could be entertained of the necessity for notice, proper in form and substance, and served within the proper jurisdiction in order to its validity."

The St. Louis Court of Appeals, in a case like the one at bar, Hedrix v. Hedrix, 103 Mo. App. l. c. 46, says: "In the opinion of this court a true and correct interpretation of section 582 of the statutes does not contemplate nor attempt to authorize, nor does it purpose a personal judgment based upon service of process on defendant beyond the boundaries of the State of Missouri. Whatever views at times may have prevailed in other states (2 Freeman, Judgments (4 Ed.), sec. 567), the courts of Missouri early recognized the principle that the authority of a judicial tribunal was confined to the territorial limits of the State establishing it, and the line of decisions in this

State recognizing that involuntary jurisdiction could be acquired of the person of the defendant only by service of process upon him within the limits of the State, is unbroken. [Smith v. McCutchen, 38 Mo. 415; Wilson v. Railroad, 108 Mo. 588; Latimer v. Railroad, 43 Mo. 105; Ellison v. Martin, 53 Mo. 575.] The case of Ellison v. Martin, 53 Mo. 575, differed from the case at bar, only in the respect that service was had upon the defendant by publication in lieu of the method of personal service now substituted by statute, and resorted to herein. The judgment for alimony therein was held void, as was the title obtained by execution sale thereunder, and the court in turn holds that the Legislature never contemplated that general judgments might be rendered merely on publication of notice without appearance of defendant. Alike on principle and authority the judgment for alimony in the divorce proceeding was void, the garnishment writ was rightly quashed, and the judgment of the lower court is affirmed."

So that we repeat that whatever may be the holdings elsewhere, our court places the acquisition of jurisdiction upon which a personal judgment can be rendered, upon the fact of personal service of the party with process in this State. In other words, no process issued by the courts of this State and served upon the party defendant in another State can be the basis of a personal judgment. And this is true whether the party in fact is a citizen of this State or of another State. To be more explicit, when our process crosses the State line it loses its vitality as an instrument upon which a personal judgment can be entered. We are cited to the case of Hamill v. Talbott, 72 Mo. App. 22, and the same case, 81 Mo. App. 210, from the Kansas City Court of Appeals. There are some observations in these two opinions which are at variance with the views heretofore announced by this court and the

St. Louis Court of Appeals, supra. To the extent that they announce a different view, they are and should be overruled. In the case at bar there is no sufficient evidence to show that Mills entered appearance or otherwise submitted to the jurisdiction of this court.

From this it follows that plaintiff's judgment for alimony and all proceedings thereafter as to the execution and sale were absolutely void and she acquired no title to the land by reason thereof.

II. But it is urged that although the deed under the execution conveyed no title, yet plaintiff having been divorced for the fault of the husband, she had left her inchoate right of dower and that this status gave her the right to redeem. The trial court without passing upon this particular question held that plaintiff's right to redeem was not an issue under the pleadings. In this we think the court was correct. The second paragraph of the replication attempted to state a cause of action to redeem from a mortgage. The petition was for the cancellation of two instruments on the ground of fraud, and the further ground that the mortgage had been fully paid. There were no allegations in the petition tending to indicate a purpose to redeem from a deed of trust sale. No such cause of action was stated therein.

Under the codes the nature of replies are thus stated in 18 Ency. Plead. & Prac., 690: "The office of a reply is to deny the facts alleged as defenses or to allege facts in avoidance of such defenses, and, while not abandoning the cause of action as originally pleaded, to fortify it by the new facts rendered necessary by the allegations of the answer." At page 707, the same authority says: "The plaintiff cannot introduce in his reply a cause of action different from that which he states in his complaint or petition; in other words, he cannot, after answer is made, abandon the cause of action set up in the complaint and make an

entirely new cause of action in the reply. Where the complaint is defective or does not contain facts sufficient to constitute a cause of action, a reply cannot cure it by supplying the necessary allegations, nor can it in any manner enlarge, in ordinary cases, the claim for relief alleged in the complaint.''

And if the reply contain matter inconsistent with the complaint it will be taken as surplusage. At page 708 of the same authority, the rule is stated thus: ''Where, in addition to new matter avoiding the answer and supporting the complaint, the reply contains surplus averments inconsistent with the complaint, the surplusage will be disregarded and is liable to be stricken out on motion.''

These rules are supported by abundant authority.

In Crawford v. Spencer, 36 Mo. App. l. c. 82, Judge THOMPSON said: '':A party must, under our system of pleading, recover upon the cause of action stated in his petition, and he cannot recover upon a cause of action stated in his reply. The provision of the statute above quoted was not, we think, intended to change the office of a reply, which is that of a denial or a confession and avoidance of matter set up in the answer.''

SMITH, P. J., in Stepp v. Livingston, 72 Mo. App. l. c. 179, said: ''If it were disclosed by the record that the plaintiff recovered on a cause of action stated in his reply, but not in his petition, it would be our duty to reverse the judgment.''

And to the same effect is the language of JOHNSON, J., in Jackson v. Powell, 110 Mo. App. l. c. 252, wherein it is said: ''We agree with appellant that a plaintiff must recover upon the allegations of his petition, not upon a cause of action pleaded for the first time in his reply.''

This court, in Hill v. Mining Co., 119 Mo. l. c. 30, uses this language: ''But, further, as to the alleged

contract made in New York.   Plaintiff based his right
to relief upon it, but yet took a departure from it
in his reply, set up an alleged estoppel, and was per-
mitted, as shown by paragraph 9 of the decree, to re-
cover thereon.   But, of course, this was erroneous.
The plaintiff had a right to relief, if at all, on his
alleged contract in writing.   Failing in that, he had no
standing in court, because of the provisions of the
Statute of Frauds.   [Ringer v. Holtzclaw, 112 Mo.
519.] See, also, Lanitz v. King, 93 Mo. 513, and Mohney
v. Reed, 40 Mo. App. 99, as to introducing matter in
reply which belongs to the petition.''

The trial court did not err in refusing to consider
the question of redemption.   It was a question raised
for the first time in the reply, and is inconsistent with
the allegations and prayer of the petition.

III.   With these two questions eliminated from
the record, but one question further need be mentioned,
and that is the alleged fraud in the deed of trust and
the foreclosure sale.   The matter of the quitclaim deed
can be entirely omitted, except in so far as it may have
been a link in the circumstances leading up to the fore-
closure sale.   By this we mean that we need not dis-
cuss the validity of this deed on the ground urged that
it cannot stand, because it conveyed with other lands
the homestead, and the wife did not join therein.   It
would serve no good purpose to review all the testi-
mony in detail as to this deed of trust.   That there
was no fraud in the execution of the deed of trust stands
practically admitted.   That there was a right to fore-
close is not denied.   The evidence shows that Landis
bought these notes for Lahrman, paying for them at
the time himself, but shortly thereafter was repaid by
Lahrman.   Lahrman knew nothing of Mills and Ekin.
It appears that Ekin held notes of Mills to the extent
of $1,500, and was about to attach the Mills's lands,
when Mills made the quitclaim deed in question. Landis

bought the land in for Ekin, thinking that he would save his client some money. Ekin was a client of Landis. Without going further into the evidence, which we have examined thoroughly, we are satisfied that the finding of the court *nisi* upon this question is well sustained. It is the duty of a party alleging fraud to show it. These conclusions make it unnecessary to discuss other questions in the briefs.

It follows that the judgment should be and is affirmed.

All concur, except *Valliant, P. J.,* absent.