## BAXTER v. CONTINENTAL CASUALTY CO.
### No. 9001.

Circuit Court of Appeals, Eighth Circuit.

March 13, 1931.

468

Douglas H. Jones, of St. Louis, Mo., for appellant.

Arnot L. Sheppard, of St. Louis, Mo. (M. F. Watts and William R. Gentry, both of St. Louis, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

STONE, Circuit Judge.

Appellee issued a policy insuring against liability arising from injury caused by automobiles. The assured named in the policy was Southwest Motor Sales Company. In one portion of the policy, Harry Shields is named as an executive officer of the above sales company. The policy provided that a person so injured might recover on the policy if an execution on a judgment for such injuries was returned unsatisfied and the insured was insolvent. Appellant brought suit for such an injury, in a state court of Missouri against the Southwest Motor Sales Corporation and Shields.[1] Personal service was had on Shields and constructive service (as hereafter described) on the company. Neither defendant appearing, default judgment was entered for $10,000. Execution was returned unsatisfied. Thereafter, appellant filed this action on the above policy, alleging the above facts in more detail; that the policy covered both the company and Shields and the insolvency of both. Appellee answered, inter alia, that the policy did not cover Shields and that the service on the sales company in the damage suit was void. The case was submitted to the court upon an agreed statement of facts. From a judgment for appellee, this appeal is brought.

Two questions are presented here. The first is whether valid service was secured upon the corporation. The second is whether Harry Shields was covered by the policy. If there was either valid service on the company or Shields was covered by this policy, the judgment should be reversed.

### I. Service.

This contention involves two matters relating respectively to the validity of the attempted foreign personal service on the sales company and to the sufficiency of the publication service on that company to authorize a judgment in personam against it.

The company was a Missouri corporation. No service could be obtained upon it in Missouri. The service was made personally upon its president who was then in Illinois. The service was in compliance with a Missouri statute (section 1192, R. S. Mo. 1919). The question here as to this personal service is the validity of that statute. The Supreme Court of the state has squarely decided the statute invalid as applied to Missouri corporations. McMenamy Inv. & R. E. Co. v. Stillwell Catering Co., 267 Mo. 340, 184 S. W. 467. It may be added that the Missouri court has also determined that a general (personal) judgment cannot be entered upon foreign personal service since such is "constructive" service. Givens v. Harlow, 251 Mo. 231, 241, 158 S. W. 355; Moss v. Fitch, 212

[1] It is stipulated that the Southwest Motor Sales Corporation and the Southwest Motor Sales Company is the same company.

Mo. 484, 497, 111 S. W. 475, 126 Am. St. Rep. 568.

The method of service by publication is not challenged. The contention is that the decisions of the state have confined service by publication to judgments and decrees affecting a res within the State and do not permit judgments in personam to be entered thereon. This claim is sustained by Priest v. Capitain, 236 Mo. 446, 457, 139 S. W. 204; Moss v. Fitch, 212 Mo. 484, 497, 111 S. W. 475, 126 Am. St. Rep. 568, and numerous other cases in Missouri. Therefore, the trial court correctly ruled that the foreign personal service on the Sales Company was invalid and that the service by publication could not support the judgment in personam entered thereon.

## II. Coverage of Policy.

The judgment in the damage case was against both the company and Harry Shields (personally). There is no question but that Shields was properly served within the state of Missouri. If the policy covers the personal liability of Shields, then the liability of appellee may be made out through Shields, irrespective of the sales company. This depends upon the meaning of the policy.

Portions of the policy material to this matter are as follows:

The appellee:

"Hereby Agrees

"To indemnify the herein named Assured against loss from the liability imposed by law upon the Assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered within the policy period by any person or persons not employed by the Assured:

"(1) while within the limits of the United States of America or the Dominion of Canada by reason of the ownership, maintenance or use (including loading or unloading), of any of the automobiles covered by this policy as described in the Schedule:

"(2) while within or upon the premises described in the Schedule or upon the sidewalk or other ways immediately adjacent thereto by reason of the maintenance and operation of the business described in the Schedule. * * *

"This insurance is subject to the following conditions and failure on the part of Assured to comply therewith shall forfeit the right to recovery hereunder. * * *

"3. Premium. The premium for this policy other than for elevator and livery coverage shall be calculated at rates specified in the Schedule as applied to entire remuneration earned during the policy period by all employes of the Assured. Such entire remuneration shall include all wages, salaries, commissions, bonuses and other remunerations. The remuneration of each active executive officer and each proprietor, including Assured if an individual and members of the firm if a co-partnership, shall be included in the payroll at an agreed amount of $2,000 each per annum. The entire remuneration of each general manager and automobile salesman shall be included not to exceed, however, $2,000 for each per annum. The remuneration of all other employes shall be included at the actual amount earned. If this policy also covers livery operations the premium for that portion of the risk shall be calculated at the rates named in the Schedule and upon total gross livery earnings charged by the Assured, whether collected or not, for the renting of automobiles covered hereby. The advance premium has been determined on the Assured's estimate of entire remuneration and/or total gross livery earnings as stated in the Schedule. At the end of the policy period the actual amounts of such remuneration and/or livery earnings shall be determined by an audit of the Assured's books and records. If such actual amounts when so determined exceed such estimates, the Assured shall immediately pay to the Company the corresponding additional premium. If they are less, the Company shall return the unearned premium when ascertained, but the Company shall retain not less than the minimum premium stated in the Schedule. The Company shall have the right to require of the Assured at any time within the policy period or one year thereafter, a sworn statement of the amount of such remuneration and/or livery earnings for the whole or any specified part of the policy period and the Assured shall furnish said statement within ten days after request. Any authorized representative of the Company shall have the right and opportunity to examine the books and records of the Assured pertaining thereto at any time during the policy period or within one year thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar such examination nor the Company's right to ad-

ditional premium. The premium for elevator coverage shall be a specific charge applicable to each elevator covered, which premium shall be included in the advance premium payable at the beginning of the policy period. * * *

"10. Schedule. The Assured by the acceptance of this policy warrants all statements of the following Schedule to be full, complete and true excepting those which purport to be estimates only.

Statement 1. Name of Assured  Southwest Motor Sales Company.
Address 3660–64 Gravois Avenue.  Saint Louis, Missouri.
The Assured is Corporation............................................................
(State whether individual, co-partnership, corporation, estate or trustee.)

Statement 2. The policy period shall be from April 21st, 1921, to April 21st, 1922, commencing and ending at 12 o'clock noon, Standard Time, at place of issue.

Statement 3. The location of the building containing the premises referred to in this policy is
3600–64 Gravois Ave.
(Street and Number)
Saint Louis...................................Missouri
(City)                    (County)                    (State)

Statement 4. The automobiles covered by this policy are and will be principally maintained and garaged in the city or town of Saint Louis, Missouri and Vicinity.

Statement 5. The automobiles covered by this policy are and will be principally used in the city or town of St. Louis, Missouri, and Vicinity.

Statement 6. None of the automobiles covered by this policy are or will be rented to others or used to carry passengers or property for a consideration, actual or implied, except as follows: No Exceptions.

Statement 7. The automobiles covered by this policy shall be all automobiles used by Assured in connection with the business operations of Assured as below described.

Statement 8. The description of the business operations of Assured, estimated number of employes, estimated total remuneration and gross livery earnings, elevators covered, premium rates and advance premium are as follows:

| DESCRIPTION OF BUSINESS OPERATIONS | Estimated Number of Employees | Estimated Total Remuneration for Policy Period | Rate per $100 of Remuneration | | | Estimated Premium |
|---|---|---|---|---|---|---|
| | | | Up to $10,000 | $10,000 to $25,000 | $25,000 to $50,000 | |
| A. (1) All operations incidental and necessary to the conduct of the Assured's business of operating Public Automobile Garage, Sales Agency and Service Station, including the operation of any style, type or make of automobile, tractor, or trailer for all purposes in such business and for pleasure use, but not the renting or hiring of automobiles to others for any purpose nor the carrying of passengers or property for a consideration except such transportation or delivery of goods or merchandise for prospective purchasers as is strictly incidental to the demonstrating and sale of automobiles. | Varies | $2500.00 | 2.50 | | | $ 62.50 |
| (2) Accidents resulting from the use of any automobile by proprietors or active executive officers shall be covered only in the event that the names of such proprietors or active executive officers are below written and $2,000 as annual remuneration is included in the estimated total remuneration for each such proprietor or active executive officer. Names of proprietors or active executive officers: | Harry | Shields 2000.00 | 2.50 | | | 50.00 |
| ..................................... Property Damage ..................................... ..................................... | | 4500.00 | 1.00 | | | 45.00 |

| B. (1) The renting or hiring to others of Private Passenger Automobiles for the carrying of passengers subject to call from the insured premises only, not including taxi-cabs, omnibuses, sight-seeing automobiles or jitney buses. <br> Estimated gross livery earnings therefrom:.................. <br> (2) The renting or hiring to others of commercial automobiles for the carrying of property. <br> Estimated gross livery earnings therefrom:.................. | Estimated Gross Livery Earnings | Rate per $100 of Gross Livery Earnings | |
|---|---|---|---|

C. This policy shall apply to injuries resulting from the maintenance, operation or use only of such elevators as are below described and for which premium is included in the advance premium. The word 'elevator' as used in this policy shall be construed to include hoists, escalators and moving platforms.

| Number of Elevators | Classification of Elevators | Number of Landings | The Location in Building of Insured Elevators is | Rate per Elevator |
|---|---|---|---|---|
| ........... | ........... | ........... | ................................. | .................................. |
| ........... | None on premises | ........... | ................................. | .................................. |
| ........... | | ........... | ................................. | .................................. |

Minimum Premium A $ 100.00    B $ 40.00    Total $ 140.00   Estimated Advance Premium   |$ 157.50"

The above quotations from the policy are clear that the only assured named in the policy is the company; that the policy protects only the assured named therein; that such policy would not protect that assured from liability because of acts of an executive officer of assured unless that officer was named and his compensation included in the premium base; that the only purpose of expressly naming Harry Shields (an executive officer) in this policy was to gain the above protection for the company (the assured) from liability it might incur through his acts; that there was no insurance protecting Shields from personal liability.

■ Appellant claims the policy is, at least, ambiguous in this respect and, therefore, should be construed against the company. The rule invoked would apply if the policy were ambiguous, but it is not. Appellant introduced certain evidence to show that the parties themselves have placed a construction upon the policy which construction, he contends, is that the personal liability of Shields was to be covered thereby. Passing over the matters of whether and how far parties may thus vary the clear meaning of a written contract, the evidence introduced does not have the contended for effect. That evidence consisted of rules of organizations of insurers of which this company was a member. One set of rules (of the "National Workmen's Compensation Bureau") covered the period when this policy was issued. The other (of the "National Bureau of Casualty and Surety Underwriters") was not until months later. As to both, it may be said that there is no pretense that insured or Shields had any knowledge thereof at any time, hence they

can be no basis for a claim of construction by the parties of the policy. The only bearing they might have would be as admissions of the insurer against interest. Obviously, the last set of rules could have no such force, as it was not in existence at the time the policy was issued and is intended to operate prospectively and not retroactively. As to the first set of rules there is no force as an admission for two reasons. First, there is no evidence that insurer ever was governed by or even followed it—these rules were merely "*suggestions* for the use of the members of the Association, in the transaction of their insurance business" (italics ours). Second, this rule set forth that, "The personal interest of any officer, partner, member of the firm or employee is not covered under a garage policy written on the payroll basis" (as this policy was) but "may be extended, however, under limitations as defined in the following endorsement, to cover the personal liability of such persons whose salary is included in the payroll upon which the premium for the policy is based, for the additional charges provided in the *Rate* Section for 'Additional Assureds—Employee and others' " and a form for such endorsement is set out which is as follows:

"In consideration of the additional premium of $...... this policy is extended to cover the legal liability as defined therein of ...... whose salary is included in the payroll upon which the premium for this policy is based, while any automobile is being operated by the said......(or by any person when accompanied by him, or while any automobile of the Assured garage is being operated with his consent), for the purposes de-

scribed in the policy and for private and pleasure purposes."

This rule is much stronger evidence for the appellee than for the appellant. However, it has no place in the construction of a policy which is in itself clear.

The judgment should be, and is, affirmed.