THE STATE ex rel. HUGH McINDOE and A. W. THURMAN v. DAVID E. BLAIR, Judge.

In Banc, December 16, 1911.

1. **CORPORATION: Suit Against Stockholder of Unpaid Stock: Service by Publication.** Before it can be said that a stockholder is indebted to an insolvent and bankrupt corporation for unpaid shares of stock held by him, there must be a trial to determine that question, which under the statute (Secs. 985 and 987, R. S. 1899) cannot be had upon constructive service by publication. A personal judgment cannot be rendered against a non-resident stockholder of a bankrupt corporation, in an attachment suit brought by publication against him and by personal service against his attorneys as garnishees for moneys turned over to them by the trustee in bankruptcy as his share of the fund, on the theory that he was the holder of unpaid stock, and as such had fraudulently assigned the money to another non-resident. In such case the question of whether the non-resident stockholder, served by publication, was indebted for unpaid stock held by him, cannot be adjudicated, because the court has not acquired jurisdiction over him.

2. **COMPULSORY INTERPLEADER: Non-Resident: Fraudulent Assignee of Fund.** The courts of this State have no authority to compel or order non-residents to appear and interplead and litigate their right to property or funds attached. The court cannot compel a non-resident assignee of another non-resident, who it is alleged had fraudulently assigned the attached fund in the hands of the assignor's attorneys in this State, to appear and interplead for the fund as against the plaintiffs in attachment.

## Prohibition.

WRIT AWARDED.

*McIndoe & Thurman* for relators.

(1) The claims of the Independent Powder Company and the Joplin Supply Company are founded upon an account against the Florence Mining Company, a corporation. The indebtedness claimed is not a direct charge against the defendant, Arthur Kennedy. The petition seeks to charge Kennedy on a personal obliga-

State ex rel. v. Blair.

tion to the company and to the Joplin Supply Company and Independent Powder Company. It involves personal rights and obligations and a judicial determination of the rights of the Independent Powder Company and of the liability of the defendant, Arthur Kennedy, to the corporation. It involves an accounting of moneys paid by Kennedy to the corporation and the value of the corporate property. It requires a personal judgment. Such a judgment cannot be rendered except on personal service or personal appearance. It cannot be rendered on service by publication and the court has no jurisdiction to render any judgment on such service. Penoyer v. Neff, 95 U. S. 714; Smith v. McCutchen, 38 Mo. 415; Wilson v. Railroad, 108 Mo. 588; Story on Conflict of Laws, section 639; Fitzsimmons v. Johnson, 90 Tenn. 424; Abbott v. Shepherd, 44 Mo. 273; Elleson v. Martin, 53 Mo. 575. (2) The only affidavit in the writ of attachment and in the order of publication alleged against defendant Kennedy is that Kennedy is a non-resident of this State. Section 575, Revised Statutes 1899, requires that the court or the clerk thereof "shall make an order directed to the non-residents or absentees, notifying them of the commencement of the suit, and stating briefly the object and general nature of the petition." The publication does not state the nature of the plaintiffs' claim, nor the object of the suit, and does not charge fraud, which is now sught to be established. Bobb v. Woodward, 42 Mo. 482; Parker v. Burton, 172 Mo. 85; Winningham v. Trueblood, 149 Mo. 584. (3) The amended affidavit was filed after the publication was made and filed. The court had no right to amend or to permit amendment on constructive service. A judgment rendered upon such amended service would be void, as the defendant could not be held without notice of such amendment. Janney v. Spadden, 38 Mo. 395; Railway v. Atchison, 137 Mo. 230; Milner v. Shipley, 94 Mo. 106. (4) A stockholder cannot be held and cannot be rendered

liable on a judgment on service of publication where the defendant resides outside of the State. The statute must be construed as only having application to residents of the State and those who may be served personally within the State. Wilson v. Railroad, 108 Mo. 588; Smith v. McCutchen, supra. (5) The courts of this State have no right or authority to order a nonresident to appear and interplead and litigate their respective rights to property or funds attached. Sheedy v. Bank, 62 Mo. 17; Shinn on Attachment, sec. 673; Wright v. Huck, 193 Mo. 130. (6) Section 987, Revised Statutes 1899, should be construed as applying only to residents of the State. Such statutes cannot be presumed to be binding upon non-residents. Connell v. Tel. Co., 108 Mo. 459.

*J. W. McAntire* for respondent.

(1) This action was brought under Sec. 987, Revised Statutes 1899, and is an action at law. Stone Cutter Co. v. Scott, 137 Mo. 527; Van Cleve v. Berky, 143 Mo. 109; Bank v. Gallagher, 43 Mo. App. 482; Shepard v. Drake, 61 Mo. App. 140. (2) Arthur Kennedy was liable for all unpaid balance of such stock, either at law or in equity. Van Cleve v. Berky, 143 Mo. 109; Stone Cutter Co. v. Scott, 157 Mo. 527; Banking Co. v. Mfg. Co., 168 Mo. 643; McClure v. Iron Co., 90 Mo. App. 578. (3) The affidavit was sufficient to authorize writ of attachment and order of publication, and is even amendable. Burnett v. McCluey, 92 Mo. 230; Avery v. Good, 114 Mo. 290; Tufts v. Volkenning, 122 Mo. 631. (4) The garnishee first disclosing in his answer a claim that the right to money in their hands had been assigned to Henry Knox, it was for their benefit that the order of publication was made as well as ours. R. S. 1899, sec. 3459; McKittrick v. Clemens, 52 Mo. 160; Swartz v. Riner, 66 Mo. App. 476; Goves v. Elliott, 65 Mo. App. 96; Schawacker v. Demp-

sey, 83 Mo. App. 354; Wilson v. Murphy, 45 Mo. 410;
Groschke v. Bardenheimer, 15 Mo. App. 359. (5) The
court has jurisdiction to try the issue as to whether
or not the assignment was made with intent to hinder
and delay creditors. Lee v. Tabor, 8 Mo. 322; Hum-
phreys v. Milling Co., 98 Mo. 550; Eyermann v. Krick-
haus, 7 Mo. App. 456; Straus v. Ayers, 34 Mo. App.
255; Joseph, Nolke & Co. v. Boldridge, 43 Mo. App.
337; Epstein v. Clothing Co., 67 Mo. App. 226. (6)
Jurisdiction in attachment proceedings is acquired
by the levy of the attachment regularly issued as this
was by order of court in term time and is not ousted by
the fact that the subsequent publication was not reg-
ularly made. Freeman v. Thompson, 53 Mo. 183; Kane
v. McCown, 55 Mo. 181; Holland v. Adair, 55 Mo. 40;
Johnson v. Gage, 57 Mo. 160; Shea v. Shea, 154 Mo.
606. (7) The authorities quoted by relators upon
their claim that the order of publication is not sufficient
to grasp the property attached, are not in point in this
case. Of those cases, except Janney v. Pedden, all were
actions under the tax law of the State to enforce the
State's lien against specific realty, and in those cases
it was held that a statement of the object and general
nature of the petition which omitted the land against
which the lien was sought was wholly insufficient; but
the counsel of relators ignore the fact that there is a
different rule which applies to attachment cases, and
the well-settled principle of law is, in attachment
causes, the jurisdiction over any given subject-matter
is obtained by levy thereon of a writ properly issued;
and no matter what or how great errors or irregulari-
ties may subsequently occur, the *res* remains still in the
grasp of the court and its judgment in regard thereto
will be valid and binding until reversed on error or
by appeal or set aside in direct and appropriate pro-
ceeding for that purpose. Harden v. Lee. 51 Mo. 244;
Freeman v. Thompson, 53 Mo. 194; Randall v. Snyder,
214 Mo. 32; Shea v. Shea, 154 Mo. 599. Prohibition

will not lie in this case. (8) The circuit court had jurisdiction over the property of defendant, Athur Kennedy, by reason of the attachment of property in the hands of McIndoe and Thurman. It was first disclosed in the answer of McIndoe and Thurman that there is a claim of an assignment of the funds to Henry Knox. It then became the duty of the court to make an order on Henry Knox to come in and interplead under Sec. 3459, R. S. 1899. If the court had jurisdiction to do this, and it had jurisdiction over the property of Kennedy, impounded by attachment in this case, and also had jurisdiction over the persons of McIndoe and Thurman, it certainly had jurisdiction to try and determine the issues, and in such cases a writ of prohibition would not lie. State ex rel. v. Elkins, 130 Mo. 90; Railway v. Wear, 135 Mo. 230.

WOODSON, J.—This is an original proceeding instituted in this court, seeking to prohibit the circuit court of Jasper county from further proceeding with the trial of two certain causes pending therein, namely: The Independent Powder Company v. Arthur Kennedy, and The Joplin Supply Company v. Arthur Kennedy. Both involve the same issues in fact and propositions of law.

In order to correctly understand the questions here presented, it will only be necessary to set out the return of the respondent, and the report of the special commissioners appointed by this court to hear the evidence, etc. The petition for the writ of prohibition is very lengthy, and it will for that reason be omitted from this statement.

The return (formal parts omitted) is substantially as follows:

Admits that the respondent is one of the judges of the circuit court of Jasper county; that the Independent Powder Company of Missouri and the Joplin Supply Company are corporations, organized under the

laws of Missouri; that on November 16th, 1905, each of said corporations instituted a suit and obtained judgments in said court, against the Florence Mining Company, a corporation, for the sums and amounts stated in relator's petition; and that on the ——— day of ———— 1906, the Florence Mining Company was duly adjudged a bankrupt, etc.

Respondent admits that on November 16th, 1907, both the Independent Powder Company and the Joplin Supply Company instituted suits by attachments against Arthur Kennedy, who was a non-resident of the State of Missouri, by petitions which were substantially as follows:

"Comes now the plaintiff and states that it is a corporation organized and existing under and by virtue of the laws of the State of Missouri, and that the defendant Arthur Kennedy is a non-resident of the State of Missouri and resides in and is a resident of the State of Pennsylvania.

"Plaintiff for its cause of action states that at the dates shown by the itemized account hereto annexed, at the special instance and request of the Florence Mining Company, a corporation, it sold and delivered to said corporation certain goods, wares and merchandise of the value and for the price of $2706, the items of which, as well as the dates when the various articles were sold and the prices charged therefor respectively, appear from the bill of items hereto annexed, marked 'Exhibit A.' Plaintiff states that the prices charged therefor were reasonable, and that the said corporation promised and agreed to pay the same, but failed to do so. That thereafter, on the ——— day of ———, 1906, this plaintiff sued said corporation in the circuit court of Jasper county, Missouri, and obtained a judgment against it for said claim and interest, being $3040.91. That within four months thereafter, towit, on the 6th day of August, 1906, the said corporation was adjudged a bankrupt by due pro-

cess of law. That no part of said judgment has been paid. That thereafter this plaintiff presented said judgment to the referee in bankruptcy and the same was filed, and the sum of $3040.91 allowed as a claim against said bankrupt corporation. That there is still due this plaintiff, after giving credit for the amount of $905.99 to be paid by the trustee in bankruptcy to this plaintiff, the sum of $2134.92, said sum being still due upon said judgment so allowed by the referee in bankruptcy and upon the original account and is still unpaid.

"Plaintiff further states that the Florence Mining Company was a corporation organized under the laws of the State of Missouri, and under chapter 12 of the Revised Statutes of the State of Missouri, on or about the —— day of April, 1905, with a capital stock of $100,000 divided into 100,000 shares of the par value of one dollar each. That in May, 1905, a mining lease standing in the name of H. W. Bishop and in which Arthur Kennedy had a certain interest was assigned to the corporation for the capital stock of the same.

"Plaintiff further states that at the time that the lease was assigned, with all improvements thereon, the said leasehold interest and improvements were not worth to exceed $12,000. That the stockholders undertook to set apart 25,000 shares of said stock as treasury stock to be held and used for the benefit of the company. That out of the 75,000 shares of stock there was issued to Arthur Kennedy 30,000 shares representing his interest in the lease, which said interest is alleged to be a four-tenths interest.

"The plaintiff further states that on this 30,000 shares he paid an assessment or contribution of five cents per share. That thereafter, to-wit, on the —— day of ————, 1905, the Florence Mining Company caused the 25,000 shares of treasury stock to be transferred or to be issued to the said Arthur Kennedy and

the owner paid therefor $12,000. The plaintiff further alleges that the said Arthur Kennedy was a party to the arrangement by which the company was organized and the lease conveyed to it and the stock issued as above recited and that all of the transactions of the corporation were done by and with his consent and active concurrence, and with the full knowledge of all of these facts and of the character and value of the property in payment of its capital stock.

"That the said Arthur Kennedy was at the date and time the plaintiff herein gave credit to said corporation, the owner and holder of 55,000 shares of the capital stock of the Florence Mining Company. That he had only paid thereon the sum of $18,800, leaving a balance unpaid upon said stock in the sum of $36,200, which he had never paid to said corporation and had never notified this plaintiff that the same was unpaid.

"The plaintiff further states that the Florence Mining Company, a corporation, has been dissolved. That on or about the 6th day of August, 1906, it became totally insolvent and bankrupt and a petition was filed in the United States District Court for the Southwestern Division, Judicial District of Missouri, against it by a part of the creditors of said Florence Mining Company, and on the 6th day of August, 1906, the said Florence Mining Company was adjudged and declared a bankrupt. That the total amount of its assets were reduced to cash by the trustee in bankruptcy and realized only the sum of $8250, whereby it became dissolved, being unable by reason of a total want of funds and means to exercise its corporate powers. That the total amount of debts proved up against said bankrupt was as follows:

"By Arthur E. Kennedy the sum of $11,102.48, and by other creditors, including this plaintiff, the total sum of $13,764.45, making a total amount of the

indebtedness proved up against said bankrupt of the sum of $24,866.93.

"The plaintiff further states that the time Arthur Kennedy procured and acquired the 55,000 shares of stock so held by him, he took and acquired the same with full knowledge of the non-payment of the capital stock and that by failing to pay the full amount of the capital stock so held by him he was guilty of a fraud upon the creditors of said Florence Mining Company, and thereby and under the statutes of the State of Missouri, became liable to the defendant for such an amount as was due it from the corporation, to-wit, the sum of $2134.92.

"Wherefore plaintiff asks judgment against the defendant Arthur Kennedy for the sum of $2134.92 and costs of suit."

Then follow signatures of attorneys.

"That thereupon a writ of attachment was issued against the property and effects of Arthur Kennedy and money claimed to be in the hands of John M. Malang was attached and thereafter, owing to the fact that John M. Malang was trustee in bankruptcy, he was discharged.

"That the publication was in words as alleged by relators and admits that the same was duly published. Respondent alleges that on the 6th day of February, 1908, in open court an order was made in each of said causes that an *alias* writ of attachment issue against Arthur Kennedy in each of said causes commanding the sheriff to attach goods, tenements and moneys of Arthur Kennedy. That on the 10th day of February, 1908, McIndoe & Thurman were summoned as garnishees, as alleged by them; that publication was issued and published in each of said causes as alleged by relators, and that the same was duly published, and alleges that proof thereof was made to the said court; that interrogatories were filed as alleged by relators in each of said causes and that answers were filed sub-

stantially as alleged by relators in each of said causes. Respondent says that in the first answer filed in said causes the relators did not allege, as claimed by them in their petition herein, that the funds sought to be reached as the property of Arthur Kennedy had been sold and assigned by said Kennedy to Allen Wilson for value and from Allen Wilson to Henry Knox, but said answer did allege as follows: 'The garnishees further state that any funds sought to be reached belonging to Arthur Kennedy, or supposed property of Arthur Kennedy, sought to be reached in the hands of the garnishees, had been sold and assigned by said Kennedy to Henry Knox, a citizen of the State of New York, long prior to the attachment herein, which the garnishees believe to be true.'

"That as to said first answer, the plaintiffs in each of said causes filed exceptions on account of the alleged insufficiency thereof, which exceptions were by the court sustained. That thereafter the said garnishees on the 18th day of May, 1908, filed in each of said causes their amended answer, in substance as pleaded by them in their petition herein on pages 9 and 10 thereof.

"Admits that plaintiffs in each of said causes filed their respective denials as alleged by relators.

"That on the 26th day of May, 1908, the plaintiffs in each of said causes filed an application to require Henry Knox to interplead, and that said application was in words as alleged by relators in their petition herein on pages 13 and 14 thereof, and thereupon the plaintiffs asked and the court granted an order of publication requiring said Henry Knox to interplead for said funds so claimed to be assigned to him."

Thereafter the garnishees and Henry Knox, by his special motion, appearing for the purpose of the motion only, moved to quash the service in the Independent Powder Company case against Arthur Kennedy and also in the case of Joplin Supply Company v. Ar-

thur Kennedy. The court sustained the motion to quash the said order as to the Joplin Supply Company, but has not yet passed upon the motion to quash the order as to the Independent Powder Company of Missouri v. Arthur Kennedy.

The said order of publication to Arthur Kennedy was based upon an affidavit, which is as follows, omitting caption and heading:

"J. W. McAntire being duly sworn, makes oath and says that he is attorney and agent of the plaintiff above named.

"Affiant further states upon oath that Henry Knox who makes some claim to property and funds belonging to Arthur Kennedy, now in the hands of the garnishees and attached by the plaintiff as the property of Arthur Kennedy, is a non-resident of the State of Missouri and that the ordinary process of law cannot be served upon him in this State.

"Wherefore plaintiff asks that an order of publication be ordered published in some newspaper for three consecutive weeks, notifying the said Henry Knox to be and appear on or before the 30th day of October Term, 1908, in the circuit court of Jasper county, Division No. 2, at Joplin to sustain his claim if any he has to such funds and money now in the hands of the garnishee and attached by the plaintiff in this case."

Which said affidavit was duly sworn to.

That thereafter the order of publication was issued requiring Henry Knox to appear and interplead in said causes, which order of publication was as follows (formal parts omitted):

"Whereas it appears by the answer of the garnishees in the above entitled cause that the debt owing by them to the defendant, Arthur Kennedy, has been sold and assigned by said Arthur Kennedy to Henry Knox before the attachment writ and writ of garnishment was served herein, and it further appear-

ing that the plaintiff herein contests and disputes the existence, force and validity of such sale and assignment and claims that the same was made without any consideration passing from Henry Knox to Arthur Kennedy, and was made for the purpose of hindering, delaying, defrauding and cheating the creditors of Arthur Kennedy, and it further appearing to the court by the answer of the garnishees herein and by affidavit of plaintiff filed herein that the said Henry Knox is a nonresident of the State of Missouri and that the ordinary process of law cannot be served upon him in this State.

"It is therefore ordered by the court that the said Henry Knox be and is hereby notified to be and appear in the circuit court of Jasper county, Missouri, in Division No. 2, at Joplin on or before the third day of the October Term, 1908, to-wit, on or before October 7, 1908, and by proper pleading sustain his claim to the funds or debt now in the hands of the garnishees claimed by the plaintiff to be the property of said Arthur Kennedy, defendant in the attachment suit herein.

"It is further ordered by the court that a copy hereof be published at least once a week for three consecutive weeks, the last insertion to be at least fifteen days before the first day of the October term of said court and the said publication be made in the Joplin Weekly Times, a newspaper published in said county and designated by the plaintiff as most likely to give notice to said Henry Knox, claimant as aforesaid.

"A true copy." Properly attested.

Said publication was, as the records show, published for at least three weeks, to-wit, four weeks beginning on August 20, 1908, and ending 10th day of September, 1908, once a week for three consecutive weeks in a newspaper in the city of Joplin, Jasper county, Missouri; that the last insertion of said order of publication was made more than fifteen days before the first day of the October term, 1908.

That therefore, on the 7th day of October, 1908, a motion was made both by Henry Knox and by the garnishees, McIndoe and Thurman, in each of said causes to quash the order of publication made by the court notifying Henry Knox to appear and interplead and the service of said order for the principal reason that Henry Knox was a nonresident of the State and that service obtained upon him by publication was illegal and void. That the motion to quash in the case of the Independent Powder Company is still pending and undetermined as shown by the record.

That in each of said cases there is also now pending and undetermined a motion to strike out a part of plaintiff's denial to answer of garnishees filed in each of said causes, a copy of denials being shown in relators' petition.

"That the petition of the Independent Powder Company and Joplin Supply Company state causes of action against Arthur Kennedy under Revised Statutes 1899, section 987, and attachment writs were properly issued and levy made upon the property of the defendant and defendant was duly notified by publication in a proper way that suit had been commenced against him and his property attached. That plaintiffs in each of the cases attached money amounting to something over $3000, which had been received by relators as his attorneys from money collected from John M. Malang, trustee in bankruptcy of the Florence Mining Company, bankrupt, in which company Kennedy was a stockholder holding 55,000 shares of the capital stock of said Florence Mining Company. That at the time the Florence Mining Company was adjudged a bankrupt and at the time plaintiff sold goods to said bankrupt previous to the adjudication the said Kennedy had only paid in money and property for said shares of stock the sum of $18,000, and owed to the corporation a balance of $36,200. That he participated in the frauds complained of in plain-

tiffs' petitions and was liable to plaintiffs for money due them on their accounts which had been reduced to judgments.''

The following are the material portions of the commissioner's report, as filed in this court, viz.:

''I further certify that both sides announced ready to proceed and that the following admissions were made and offered by the parties to said case, to-wit:

''1. That the Florence Mining Company has been discharged in the bankruptcy proceedings referred to in the petition of relators and the return of respondent.

''2. That in the suit of the Independent Powder Company v. Arthur Kennedy, referred to in the pleadings, there was filed with the petition in that case an itemized statement as set out in relators' reply, which is marked and referred to as 'Exhibit A.'

''3. That in the garnishment proceedings against John M. Malang, trustee in bankruptcy of Arthur Kennedy, referred to in relators' petition, Malang did not plead that the money sought to be reached by said garnishment had been assigned to one Wilson and from Wilson to Knox, but that said Malang based his right to a discharge on the ground that he was trustee in bankruptcy and that the funds were *in custodia legis,* upon which said answer Malang was discharged.

''4. That the first answer filed by relators in the garnishment proceedings against them by the Independent Powder Company and the Joplin Supply Company referred to in the pleadings herein, the said garnishees' answer contained the allegations quoted in respondent's return herein.

''5. That the allegation in relators' petition herein 'that under the answer of the garnishees in the suit of the Independent Powder Company against Arthur Kennedy in which these relators are garnished and under the exceptions filed by the plaintiff therein the

238 Sup.—10

plaintiff admits that the said funds had been assigned,' is based solely upon the relators' construction of the pleading filed by the Independent Powder Company to require Knox to interplead.

"6. That the orders of publication in the cases entitled 'Independent Powder Company and Joplin Supply Company v. Arthur Kennedy, defendant; Hugh McIndoe and A. W. Thurman, garnishees, and Henry Knox, claimant of the debts and funds attached,' set out at pages 8 and 9 of respondent's return, were published for three consecutive weeks, the last publication being more than fifteen days before the October Term, 1908, of the circuit court of Jasper county, Missouri.

"7. That there is now pending and undetermined in the circuit court of Jasper county, Missouri, a motion to strike out a part of the plaintiff's denial of the amended answer of the garnishees in each of the cases of the Independent Powder Company and the Joplin Supply Company v. Arthur Kennedy, defendant; Hugh McIndoe and A. W. Thurman, garnishees.

"8. That on April 19, 1909, there were filed in the circuit court of Jasper county in each of the cases of Independent Powder Company and Joplin Supply Company v. Arthur Kennedy; Hugh McIndoe and A. W. Thurman, garnishees, by said garnishees, the following motion, omitting caption, title and signatures:

"'Come now the garnishees herein and move the court for judgment discharging them under the pleadings and issues tendered and assign the following reasons therefor:

"'1st. Because the court has no jurisdiction over the principal defendant Arthur Kennedy and thereby acquired no jurisdiction over the defendants or any debts or funds that may be due by them to the defendant sought to be held under the process of garnishment issued herein, in that the order and service of publication is insufficient under the statutes of this

State and does not notify the principal defendant Arthur Kennedy of the commencement of the suit and by stating briefly the publication and general nature of said petition.

" '2nd. Because the petition filed by plaintiff is not such an action as to constitute or be a basis upon which an attachment can issue, being of an equitable nature and not upon a liquidated demand and that the court has no jurisdiction over the garnishees by reason of any process issued thereof.

" '3rd. Because the court has no jurisdiction over the defendant and has no jurisdiction over the garnishees of any funds in their hands or any debts that may be owing or any right to prosecute against the garnishees because of the lack of jurisdiction.

" '4th. Because under the issues tendered by the plaintiff and garnishees under the answer and denial made herein the garnishees deny and plead an assignment to Henry Knox a citizen of the State of New York, and the plaintiff admits such assignment, but undertakes to challenge said assignment on the ground that the assignment was fraudulently made, that the adjudication of such question would require a personal judgment and adjudication of the rights of the assignor and assignee which this court has no jurisdiction to hear and determine; that such proceedings are beyond the scope of the attachment against the principal defendant, Arthur Kennedy, and beyond the scope of the publication issued against him, and embraces issues not raised by the pleadings against the principal defendant, Arthur Kennedy, and this court has no right of jurisdiction to determine or conclude the right of Henry Knox in said assignment, said Knox not being before this court and not being a party to this proceedings.

" '5th. Because the court has no jurisdiction over the principal defendant and has no jurisdiction over

the garnishees herein and has no jurisdiction over any debts or funds owing by them to the plaintiff.

" 'Wherefore the garnishees pray judgment on the pleadings and that the garnishees be allowed to go hence with their costs.'

"And that thereafter on June 5, 1909, the said motions were by the court overruled and at the request of said garnishees they were by order of court permitted to file their bill of exceptions on or before the October Term, 1909, but that no bill of exceptions was ever filed.

"9. That on February 6, 1908, in open court an order was made in each of the cases of Independent Powder Company and Joplin Supply Company v. Arthur Kennedy, then pending in the circuit court of Jasper county, an order was made that an *alias* writ of attachment issue against said Arthur Kennedy in each of said cases commanding the sheriff of said county to attach the lands and tenements, goods, chattels, moneys, credits, evidences of debts and effects of said Kennedy.

"10. That after the amended affidavit of the plaintiff in each of the cases of the Independent Powder Company and of the Joplin Supply Company v. Arthur Kennedy, referred to in respondent's return at pages 10 and 11, were made and filed no further publication was made as to said Kennedy or Knox.

"11. That there is no record or memoranda on the judge's docket or other records of the circuit court of Jasper county, in the case of Independent Powder Company v. Arthur Kennedy; Hugh McIndoe and A. W. Thurman, garnishee, showing that the motion of Henry Knox and said garnishees filed therein October 7, 1908, to quash the order of publication made by the court notifying said Knox to appear and interplead, has been by said court passed upon and that as shown by the records of said court said motion is yet pending therein and is undetermined in said case.

"I further certify that relators offered to show that the last-above referred-to motion was filed at the same time that a similar motion was filed in the Joplin Supply Company case; that both motions were argued on the same date and that the court announced his ruling from the bench sustaining both motions, but that the record entry of the ruling was not made in the Independent Powder Company case.

"To which offer respondent objected for the reason that the same was incompetent, irrelevant and immaterial; that said offer was refused and relators duly excepted.

"I further certify that the above and foregoing is all of the offers of testimony and admissions and that a copy hereof has been delivered to counsel appearing for the respective parties and that notice has been given to said counsel of the filing hereof."

I.  This record in brief discloses that Arthur Kennedy, a resident of the State of Pennsylvania, was a stockholder in the Florence Mining Company, organized and existing under the laws of this State, for which it is claimed he had not paid the par value. That the Independent Powder Company and the Joplin Supply Company each sold and delivered to the Florence Mining Company certain goods, wares and merchandise, on credit.  That the two former companies sued the latter for the purchase price of said goods and received a judgment therefor.  In the meantime the Florence Company was duly adjudged a bankrupt; and thereupon the Independent Company and the Joplin Company each presented their claims against the Florence Company, to the referee in bankruptcy for allowance, which were by him allowed.  The trustee in bankruptcy paid the two former companies some $900, on their claims, leaving a balance due them of some $2100. At the same time Arthur Kennedy also had a claim against the Florence Company, which he likewise pre-

sented to the referee for allowance, which was allowed for the sum of $11,102.48. Upon this claim a dividend of some $3000, was declared and paid by the trustee, to the relators, McIndoe and Thurman, attorneys of said Kennedy. While this money was in the hands of the relators, the Independent Company and the Joplin Company each instituted suit in the circuit court of Jasper county, under sections 985 and 987, Revised Statutes 1899, by attachments against said Kennedy, and garnished said $3000 in the hands of the relators. The relators were personally served, while Kennedy was served by publication only.

Relators only answered, and among other things admitted that Kennedy was a nonresident of this State, as alleged by the plaintiffs, and stated on that account that the circuit court of Jasper county did not and could not acquire jurisdiction of said Kennedy, by publication, in this character of a suit; also that long prior to the date when the $3000 was paid to them by the trustee in bankruptcy, Kennedy had assigned, sold and transferred his said claim against the Florence Company, to one Knox, a resident of the State of New York.

To this answer the plaintiffs filed a reply denying the new matter stated in the answer, and charged that the assignment to Knox was fraudulently made for the purpose of hindering the creditors of said Kennedy. And thereupon the court made an order that said Knox appear in the Jasper County Circuit Court, and interplead for said $3000, and he was duly notified by publication of said order of the court.

Thereupon Knox and Kennedy, appearing specially for the purpose of the motion only, moved the court to quash the service had upon them, for the reason that the court had acquired no jurisdiction over them by the publications aforesaid. The relators filed a motion to the same effect. Neither of these motions have been passed upon by the circuit court, but the

court indicated that it would overrule them and in the return filed here contends that it has jurisdiction of Kennedy and Knox, and expresses a determination to proceed with the trial of the causes.

It was upon this state of the record that relators appealed to this court for a temporary writ of prohibition, which was duly issued; and now they ask that it be made permanent.

The sections of the statute before mentioned read as follows:

"If any execution shall have been issued against any corporation, and there cannot be found any property or effects whereon to levy the same, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned: Provided, always, that no execution shall issue against any stockholder except upon an order of the court in which the action, suit or other proceedings shall have been brought or instituted, made upon motion in open court, after sufficient notice, in writing, to the person sought to be charged; and, upon such motion, such court may order execution to issue accordingly; and provided further, that no stockholder shall be individually liable in any amount over and above the amount of stock owned." [R. S. 1899, sec. 985.]

"If any company formed under this chapter dissolve, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the company in such suit; and if judgment be rendered and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of the dissolution, for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from the property of each stockholder respectively; and if any number of stockholders, defendants in the

case, shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally amongst all the remaining stockholders, and collections made accordingly, deducting from the amount a sum in proportion to the amount of such stock owned by the plaintiff at the time the company dissolved.'' [R. S. 1899, sec. 987.]

This record presents several legal propositions, but in the view we take of the record it will be only necessary for us to consider two of them, namely:

First: Did the circuit court of Jasper county acquire jurisdiction over Kennedy by virtue of the publication before mentioned? and, second, did the circuit court of Jasper county have the power and authority to require Knox, a nonresident of this State, to appear and interplead for the $3000 in the hands of the relators?

Counsel for respondent affirm both of these propositions while counsel for relator deny both.

We will dispose of these questions in the order stated.

(a) The position of counsel for respondent is, that this is a proceeding *in rem*, rather an action *quasi in rem;* the money in question being in the hands of the relators, who are within the jurisdiction of the court, it has the power to adjudicate the rights of the parties thereto, upon personal service had upon the relators, as garnishees, and service upon Kennedy by publication.

As an abstract legal proposition, counsel for relators do not question that position (Freeman v. Alderson, 119 U. S. 185), but they insist that the doctrine there contended for has no application to the facts of this case.

We fully concur with counsel for the relators in this latter contention, for the reason that before it can be legally said that Kennedy owes or is indebted to

the Florence Company, in any sum whatever, for unpaid shares of stock, held by him, there must be a trial had to determine that question, which cannot be had upon constructive service by publication, for the obvious reason that when such a judgment is rendered, if ever, against Kennedy, it must be a personal judgment against him; and under the statute mentioned there is no other means by which that question can be determined.

That question was so fully and completely discussed and answered by SHERWOOD, P. J., in the case of Wilson v. St. Louis & San Francisco Ry. Co., 108 Mo. 588, that there is nothing remaining to be said upon that subject.

The same question has also been answered in the negative in the following cases: Pennoyer v. Neff, 95 U. S. 714; Freeman v. Alderson, 119 U. S. 185; Smith v. McCutcheon, 38 Mo. 415; Bobb v. Taylor, 25 Mo. App. 582; Story on Conflict of Laws, sec. 639; Kemper Paper Co. v. Shyer, 67 S. W. (Tenn.) 856; Fitzsimmons v. Johnson, 90 Tenn. 424; Beyer v. Trust Co., 63 Mo. App. 521; Ellison v. Martin, 53 Mo. 575.

The Wilson case has been cited with approval in the following cases: Moss v. Fich, 212 Mo. l. c. 500, 501; State ex rel. v. Wilder, 196 Mo. l. c. 431; City of Tarkio v. Clark, 186 Mo. l. c. 293; Bartlett v. Tinsley, 175 Mo. l. c. 333; Parker v. Burton, 172 Mo. l. c. 92; and numerous others.

We therefore hold that the circuit court of Jasper county acquired no jurisdiction over the person of Kennedy, and for that reason the question as to whether or not he was indebted to the Florence Company for shares of stock held by him, cannot be adjudicated in this case, and for that reason, the motion to quash should be sustained.

(b)  The second proposition before mentioned has been answered in the negative by this court, in equally positive terms.

In the case of Sheedy v. Bank, 62 Mo. 17, this court held that the courts of this State have no right or authority to order nonresidents to appear and interplead and litigate their respective rights to property or funds attached. The ground upon which Judge WAGNER based that decision was that a garnishment proceeding was strictly a proceeding at law, and that the courts of this State had no right or authority to compel nonresidents to appear and litigate equitable matters in such a proceeding. That ruling has never been questioned, and the ruling there made is predicated upon a solid foundation and should be adhered to. [See Reno on Non-Residents, sec. 188.]

We are therefore of the opinion that the circuit court of Jasper county never acquired jurisdiction over Knox, not only for the reason stated in the previous paragraph, but also for the reason that the court had no authority to compel him to appear, and interplead for the money in the hands of the relator, even though it be conceded Kennedy had assigned the same to him.

His motion to quash the service should also have been sustained.

We therefore order that a permanent writ of prohibition issue against the circuit court of Jasper county, as prayed. All concur.