## FANNIE P. CHAPMAN, Appellant, v. FRED E. CHAPMAN et al., Respondents.

**St. Louis Court of Appeals, April 18, 1916.**

1. **APPELLATE PRACTICE: Record: Opinion of Trial Court.** The written opinion of the trial judge in a divorce suit, while not a part of the record, and not to be treated as such, may be referred to by the appellate court.

2. **JUDGMENTS: Service by Publication: Judgment in Personam.** Service by publication, or personal service beyond the limits of the State, will not support a judgment *in personam*.

3. **DIVORCE: Judgment for Alimony: Constructive Service.** While the ordinary divorce suit is a proceeding *in rem*, the marriage status constituting the *res*, a personal judgment against the husband for alimony as an incident thereto cannot be supported by constructive service upon him.

4. **JUDGMENTS: Service by Publication: Judgment in Personam: Validity of Statute.** A statute purporting to authorize the rendition of a personal judgment against a nonresident defendant, upon service, either by publication or personal service beyond the limits of the State, is void.

5. **HUSBAND AND WIFE: Enforcement of Marital Obligations: Public Policy.** It is the settled policy of this State to enforce the husband's marital obligations.

6. **DIVORCE: Constructive Service: Charging Alimony as Lien upon Husband's Realty.** Under sections 2375 and 1770, R. S. 1909, the circuit court has jurisdiction, in a suit by a wife for divorce against her absconding husband, to subject the husband's realty within the jurisdiction of the court to a lien for alimony, although the service of process upon him is constructive, and if the statutes were not sufficiently broad to authorize the proceeding, equity would supply the remedy; the judgment not being one *in personam*, but operating merely as a charge upon the land and spending its force thereon.

   *Held,* by Reynolds, P. J., dissenting, that the divorce statute must be looked to for the procedure that obtains, and that statute not authorizing such a proceeding, it is not maintainable; *held, further,* that the proceeding is not maintainable because a judgment for alimony on constructive service is void.

7. ———: ———: ———: **Legal Title in Third Person.** And such a proceeding is maintainable where the husband has caused real estate to be conveyed to a third person who holds the bare

Chapman v. Chapman.

legal title, and upon whom, as well as the husband, constructive service only is obtained; the judgment awarding alimony as a special lien against the real estate not operating, *ipso facto*, to divest title, but merely fastening a charge upon the husband's interest. [REYNOLDS, P. J., dissents.]

8. ——: ——: ——: Bringing Property Within Court's Control. In such a proceeding, the appointment of a receiver for the husband's property is not necessary, since the suit proceeds, as *in rem*, against the property, which is thereby directly brought within the control of the court. [REYNOLDS, P. J., dissents.]

9. EQUITY: Operation in Rem. Equity ordinarily acts *in personam*, and such was the early conception of equity jurisdiction; but in modern practice, equity frequently affords relief in proceedings substantially *in rem*, where the exercise of such jurisdiction is essential to the granting of adequate relief to the complainant.

10. COURTS OF APPEALS: Jurisdiction: Title to Real Estate Involved. On an appeal by a wife from a decree granting her a divorce, but refusing, for the reason service on the husband was by publication, to subject his equitable title to real estate (the bare legal title to which was in a third party defendant) to a lien for alimony, title to real estate was not involved, within Sec. 12 of Art VI, of the Constitution as amended by the Amendment of 1884, so as to deprive the Courts of Appeals of jurisdiction of the appeal, since, in order to grant relief, it would not be necessary to set aside the conveyance to the third person or directly adjudicate the question of title, but the relief would consist merely in fastening a charge upon whatever interest the husband might have in the land. [REYNOLDS, P. J., dissents.]

11. DIVORCE: Constructive Service: Charging Alimony as Lien upon Husband's Realty: Venue. In an action by a wife for divorce and to subject the real estate of her absconding husband (upon whom constructive service only was obtained) to a lien for alimony, brought in the circuit court of the county of her domicile, conformably to Sec. 2371, R. S. 1909, the court has jurisdiction to subject land belonging to the husband, situate in another county in the State, to such lien. [REYNOLDS, P. J., dissents.]

12. ——: Nature of Action: Alimony. The action for divorce is a proceeding *sui generis*. It deals with a status, one incident of which is the husband's obligation to support and maintain the wife.

REYNOLDS, P. J., dissents.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED. CERTIFIED TO SUPREME COURT.

*Henry H. Oberschelp* for appellant.

(1) If a defendant is not personally served and does not enter a voluntary appearance, a personal judgment cannot be rendered. Nevertheless, as the State has control over the marriage status of its inhabitants and also over property within its boundaries, in a suit for divorce and alimony, based on service by publication, the court may acquire jurisdiction to render a judgment *in rem* not only as to the marriage status, dissolving it, but also as to the property within the State, subjecting it to alimony award of the court, if the proper foundation is laid by the pleadings and the process. Wesner v. O'Brien, 56 Kan. 724; Harshberger v. Harshberger, 26 Ia. 503; Benner v. Benner, 63 Ohio St. 220; Hanscom v. Hanscom, 6 Colo. App. 97; Pennoyer v. Neff, 95 U. S. 714; Moss v. Fitch, 212 Mo. 485; Ellison v. Martin, 53 Mo. 575, 578. (2) In suits for divorce and alimony based on service by publication, in considering the extent of the court's jurisdiction in rendering a judgment *in rem*, there are two distinct *res* to be considered; one the marriage status to be dissolved; the other the husband's property within the State sought to be subjected to the alimony award of the court. Same cases as under point I. (3) Jurisdiction as to these separate *res* depends mainly upon the allegations in the petition and order of publication. If both set forth the marriage and prayer for its dissolution, the court acquires jurisdiction over the marriage status. But for the court also to acquire jurisdiction over the property to be subjected to the alimony award, both must also set forth the husband's ownership of certain real estate in the State, fully describe the same with prayer to establish and enforce alimony award against said property. Cases under point I. (4) In all those cases where the courts granted divorce but not alimony on constructive service, there had been a proper foundation laid for jurisdiction over the one *res,* the marriage, but not over the other *res,* the husband's property in the State. In the present case jurisdiction over the property has been obtained so as to subject it to special

judgment *in rem* against it for alimony award, for the amended petition and publication thereunder describe the husband's real estate in this State with prayer for its subjection to the alimony award.   While this precise question has never been presented to the appellate courts of this State, yet the Supreme Court and this Court of Appeals have clearly indicated that if it were they would award alimony and enforce it against the thus-described real estate.   Moss v. Fitch, 212 Mo. 485; Ellison v. Martin, 53 Mo. 575, 578;   Elvins v. Elvins, 176 Mo. App. 645.   (5) Wherever a husband's property within a state has thus been brought under the control of the court in suits for divorce and alimony, throughout the United States, according to the published decisions, alimony has always been awarded and enforced as a special judgment *in rem* against the described property.   Wesner v. O'Brien, 56 Kan. 724;   Harshberger v. Harshberger, 26 Ia. 503;   Benner v. Benner, 63 Oh. St. 220;   Hanscom v. Hanscom, 6 Colo. App. 97.   (6) (a) The sections of the Revised Statutes under the heading Divorce and Alimony, Secs. 2370-2381, contain no provisions for process.   Any judgment on constructive service for its validity as to the divorce as well as to the alimony depends upon publication in accordance with section 1770 et seq.   (b) Section 1770, R. S. 1909, authorized the publication to dissolve the marriage, as this is a suit "in divorce," and it likewise authorized the publication for the purpose of rendering a judgment *in rem* for alimony against the property mentioned, as it may be regarded as enforcement of a lien, and most certainly is an action which has for its "immediate object the enforcement or establishment of a lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court."   Section 1770, R. S. 1909;   Benner v. Benner, 63 Ohio St. 226.   (7) As property of the husband has been brought under the control of the court. by the pleadings and process, and the evidence showed and the court found it to belong to the husband, it was the duty as well as the right of the court not only to grant

divorce but also to award alimony and enforce the same against said property. Section 2375, R. S. 1909. (8) (a) As this was a suit for divorce and alimony, and alimony could only be granted in connection with the divorce, it had to be brought in St. Louis City, where plaintiff resided; but as its judgment could be enforced through the State, it had the right and duty to award alimony as a judgment *in rem* against all the mentioned property of the husband in the State, including that just over the city limit in the county of St. Louis. Sections 2176, 2371, 2375, R. S. 1909; Wesner v. O'Brien, 56 Kan. 724; Harshberger v. Harshberger, 26 Ia. 505. (b) Even if this were a separate, independent suit to subject the husband's real estate to alimony, as "some part thereof is situate" in St. Louis City, judgment would be binding on all the mentioned property. Sec. 1753, R. S. 1909. (c) In any event as plaintiff resided in the city of St. Louis and part of the real estate is situated there, judgment for full alimony award can be enforced against the property in said city. (9) Whatever interest, even equitable, the husband has in the real estate mentioned, even though it appear of record in name of another, can and must be subjected to judgment and execution for alimony in this case. Sec. 2192, R. S. 1909, Sub. 5th. (10) *Ubi jus, ibi remedium.*

No brief filed for respondent.

ALLEN, J.—Plaintiff herein sues for divorce, and seeks in the same action to have a receiver appointed to take charge of certain real estate alleged to be the property of her ascending husband, Fred E. Chapman, and to have the same, or a part thereof, appropriated to the payment of alimony in gross which she prays the court to award to her as a special lien or demand against such property. The suit proceeds, not only against plaintiff's husband, but the latter's brother also, to whom, it is alleged, the husband attempted to convey all of his real property in fraud of plaintiff's rights. Plaintiff was lawfully married to the defendant Fred

E. Chapman on January 26, 1911, and from that date lived with him as his wife, in the city of St. Louis, until June 4, 1914, when, it is said he deserted her.

The amended petition charges that the defendant husband offered various indignations to plaintiff, such as to render her condition intolerable; that he was guilty of such conduct as to constitute him a vagrant, within the meaning of the vagrancy statute; and that he absented himself from plaintiff without reasonable cause for a space of more than one year; and, though able-bodied and possessed of means thereof, totally neglected and refused to support plaintiff or make any provision for her maintenance. The petition further avers that plaintiff is wholly without means of support, and for the prosecution of this action; that the defendant husband, Fred E. Chapman, is the owner of a certain lot of ground, in the city of St. Louis, describing it, with improvements thereon, known as 5059 Wells avenue, and other certain described lots in the county of St. Louis, with improvements thereon, known as 6428 and 6450 Etzel avenue; that said defendant, however, caused the title to all of said real estate to be placed in the name of his codefendant, Walter Chapman, who holds the naked legal title thereto for his benefit. And it is averred that the defendant Fred E. Chapman has absconded and absented himself from his usual place of abode in this State, and has concealed himself so that the ordinary process of law cannot be served upon him; and that defendant Walter Chapman is a nonresident of the State of Missouri and cannot be served in this State in the manner prescribed by law. The petition prays that plaintiff be divorced from the bonds of matrimony contracted with defendant Fred E. Chapman, with restoration of her maiden name, and that the court "adjudge to her permanent alimony in gross for her support and maintenance, and alimony *pendente lite* and her attorney's fees and suit money and costs, and enforce and establish the same as a lawful right, claim and demand to and against said estate within the jurisdiction of this court, and

enforce the performance of the judgment by sequestration of said property and such other lawful ways and means as is according to the practice of the court; that a receiver be appointed to take charge of said property; that the defendants be enjoined from selling or in any wise disposing of or incumbering or injuring said property;" and for general relief.

Service was duly had upon both defendants by publication. Both defaulted, and upon a final hearing of the cause the court granted plaintiff a decree of divorce, with restoration of her maiden name, but declined to make any order touching the matter of alimony, and dismissed "the bill" as to defendant Walter Chapman. From this judgment plaintiff prosecutes the appeal before us.

The evidence discloses that plaintiff has suffered not only neglect but much of abuse and brutality at the hands of her husband, and that he finally abandoned her without cause and refused to support her or to contribute in any way to her maintenance. The record also discloses that, prior to the trial of this cause below, the defendant husband had been adjudged guilty of wife abandonment in a criminal proceeding, from which judgment of conviction he prosecuted an appeal which is now pending. The evidence, too, is overwhelming to the effect that defendant Fred E. Chapman is the real owner of the real estate described in plaintiff's petition, that is to say, the owner of the "equity" in each piece of property, since each is incumbered by a mortgage. He collected the rents thereof through various agents from time to time, who remitted to him. One of these collectors testified that he had collected the rents for the three months prior to the trial, and that he mailed checks therefor, excepting for the "last rent," to defendant Fred E. Chapman, at 17 North Main street, East St. Louis, Ill.; that he had not remitted the "last rent" for the reason that said defendant had left the East St. Louis address and the witness did not know how to reach him.

I. The learned trial judge filed a written opinion herein to which we are at liberty to refer, though it is not a part of the record and not to be treated as such. From this it appears that the court was satisfied that the property described in the petition was in fact the property of the defendant Fred E. Chapman, but was of the opinion that the court was without jurisdiction to render any judgment whatsoever for alimony in the absence of personal service on the defendant husband; that though plaintiff is the innocent and injured party and entitled to a divorce and alimony, no judgment of any nature respecting alimony may be rendered in her behalf upon constructive service. And the learned trial judge expressed a serious doubt "whether or not a petition asking that alimony shall be declared a lien on defendant's property in the hands of another can be joined with ordinary proceedings for divorce." It is quite true that service by publication or personal service beyond the limits of the State will not support a judgment *in personam*. [Elvins v. Elvins, 176 Mo. App. loc. cit. 651, 159 S. W. 746, and cases cited.] And while the ordinary divorce suit is a proceeding *in rem,* the marriage status constituting the *res,* a personal judgment against the husband for alimony, as an incident thereto, cannot be supported by constructive service. [See Hedrix v. Hedrix, 103 Mo. App. 40, 77 S. W. 495; Ellison v. Martin, 53 Mo. 575; Moss v. Fitch, 212 Mo. 484, 111 S. W. 475; Elvins v. Elvins, supra, loc. cit. 652, 159, S. W. 746.] And a statute purporting to authorize the rendition of a personal judgment against a nonresident defendant upon service either by publication or personal service beyond the territorial limits of the State is to that extent absolutely void. [Priest v. Capitain, 236 Mo. 446, 139 S. W. 204; Moss v. Fitch, supra; Wilson v. Railroad, 108 Mo. 588, 18 S. W. 286.]

While this is quite true, in our opinion it falls far short of determining the chief question here presented for decision. In the case now before us, plaintiff's counsel, after repeatedly making unsuccessful efforts

to have process personally served in this State, and realizing the futility of any attempt to procure a personal judgment in plaintiff's favor for alimony against her faithless and absconding husband, seeks by this proceeding to have the defendant's property within the jurisdiction of the court seized and appropriated to the payment of alimony for the support and maintenance of plaintiff. Leaving out of consideration for the present other questions to be touched upon later, let us see whether or not our law can be said to countenance a proceeding of this character, for the relief of an innocent and injured wife whose husband has absconded and, to avoid his marital obligations, keeps his person beyond the reach of the process of our courts, but who leaves behind him property within the jurisdiction of the court wherein the proceeding is instituted.

It is quite true that the question thus presented has not been directly adjudicated in the courts of this State. Our reports appear to contain no reported decision in a case of this precise character. But, though this be true, it does not follow that the proceeding is one entirely beyond the purview and contemplation of our law. While our Supreme Court has consistently held that no general judgment, *in personam,* may be rendered for alimony, or otherwise, based upon constructive service either by publication or by extraterritorial service, no decision of that court, so far as we have observed, holds or intimates that a proceeding of a character *in rem* may not be maintained in our courts to subject the property of an absconding husband, within this jurisdiction, to the support and maintenance of the wife domiciled here. On the contrary, it has been at least intimated that a proceeding of this nature may perhaps be appropriate where personal service cannot be had upon the husband.

In the early case of Ellison v. Martin, 53 Mo. loc. cit. 578, the court through ADAMS, J., said:

"Our laws do not allow general judgments to be rendered against parties merely on publication of notice, and without appearance of the defendant. The Legis-

lature never contemplated that such judgment might be given. [Smith v. McCutchen, 38 Mo. 415.] A judgment on order of publication can only be given in proceedings *in rem.*

"A divorce suit is a proceeding *in rem,* and the *res* is the status of the plaintiff in relation to the defendant, to be acted on by the court. This relation being before the court in the person of the plaintiff, the court acts on it, and dissolves it by a judgment of divorce. But there was nothing before the court to act on in regard to alimony in this case.

"Whether property can be brought before the court by describing it in the petition, and demanding a judgment *in rem* for alimony, is a question we are not now called upon to decide. This judgment was a general judgment *in personam,* and such judgments cannot be rendered in this State merely on publication of notice."

This is quoted approvingly in Moss v. Fitch, supra, (212 Mo. 484, 111 S. W. 475), in an opinion by GRAVES, J., where a personal judgment for alimony based upon extraterritorial service was held to be void.

What is so well and carefully said by the learned author of the opinion in Moss v. Fitch, supra, taken together with the excerpts quoted from other cases, appears to justify the first paragraph of the syllabus thereof, as reflecting the gist of the opinion on this point, which is as follows:

"No process issued by a court of this State, and personally served on a defendant in another State, can be the basis of a personal judgment. So that where plaintiff brought suit for divorce against her husband who was at the time in Wyoming, and he was personally served with summons in that State, but not in this State, and did not enter his appearance, the court had jurisdiction to enter a decree granting plaintiff a divorce, but no jurisdiction to award her a general judgment for alimony, even though he had property in this State. The substituted service provided for by section 582, Revised Statute 1899, is of no broader legal scope than service by publication provided for

by section 575, and service in either mode only gives the court jurisdiction over the *res,* which in a suit for divorce, without asking for a special judgment against specially described property, is the divorce, the marital relation, the status of ·the plaintiff in relation to the defendant. Disapproving certain observations on this point in Hamill v. Talbott, 72 Mo. App. 22, and 81 Mo. App. 210.''

It seems then that the Supreme Court does not, at any rate, look upon the doctrine invoked by appellant's counsel as being either startling or revolutionary in character. And to our minds there is nothing in the statutory law or the settled policy of this State to prevent the maintaining of an action of this character, properly brought, whereby property within the court's jurisdiction, specifically described in the petition, is acted upon and made to respond to the fulfillment of the marital obligations of the recreant husband, though his person be beyond the court's jurisdiction and no general judgment may be rendered against him. It is true that the action for divorce is statutory; but there appears to be nothing in our statutory provisions relating thereto, or to alimony as an incident thereto, to prevent the maintaining of a proceeding of this nature.

Section 2375, Revised Statutes 1909, provides that:

''When a divorce shall be adjudged, the court shall make such order touching the alimony and maintenance of the wife, . . . as, from the circumstances of the parties and the nature of the case, shall be reasonable, and when the wife is plaintiff, may order the defendant to give security for such alimony and maintenance; and upon his neglect to give the security required of him, or upon default of himself and his sureties, if any there be, to pay or provide such alimony and maintenance, may award an execution for the collection thereof, or enforce the performance of the judgment or order by sequestration of property, or by such other lawful ways and means as is according to the practice of the court.''

It is true that in the ordinary case it may be said that the remedies mentioned presuppose a personal judgment for alimony; but we think that a proceeding of this character, to reach the property of a husband who has absconded, and make it respond to the wife's demand, may be said to be within the purview of this section. It is the settled policy of our State to enforce the husband's marital obligations. To this end, abandonment of the wife without cause and failure to support her is denounced as a criminal offense; and the guilty husband is allowed no exemptions from a judgment for alimony in the wife's favor. The courts, in our judgment, should not hesitate to give vital force to the manifest policy of the State, to afford protection to the wife, in so far as it lies within their power so to do without doing violence to express statutory enactments or overturning established and well-recognized legal principles.

As to proceeding by constructive service in such a case, section 1770, Revised Statutes 1909, appears broad enough to warrant such course. The section provides for service of this character "in suits of partition, divorce, attachment, suits for the foreclosure of mortgages and deeds of trust, and for the enforcement of mechanics' liens and all other liens against either real or personal property, and in all actions at law or in equity, which have for their immediate object the enforcement or establishment of any lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court." The suit is for divorce, and proceeds too upon the theory that the wife, under the circumstances, has a just and lawfully enforceable "claim or demand to or against" the husband's real estate described in the petition. And we regard this theory, in the proper view of the marriage status and the husband's obligations thereunder, as being a sound one. In the ordinary action for divorce the *res* is the marriage status, which at all events is within the court's jurisdiction, and upon which its decree may operate. But, because of the nature of this

proceeding, there is here another *res*, the husband's property, described in the petition, also within the court's jurisdiction, and which, by appropriate proceedings to that end, may, we think, be appropriated to satisfy the rightful demands of the wife growing out of the marital obligations assumed by the husband by virtue of the marriage contract, which create a duty that is incident to the marriage status before the court.

Though the appellate courts of this State have not been called upon to decide the precise question here under consideration, the view thereof indicated above has been sustained by courts of last resort in other jurisdictions in many well-considered opinions.

In Benner v. Benner, 63 Ohio St. 220, 58 N. E. 569, the action was one by a wife for alimony and for the maintenance of a child born of the marriage. The petition described real estate of the nonresident husband, and "prayed the allowance, out of the property, of a reasonable amount as alimony, and a sufficient sum for the support of the child." In affirming a decree below in plaintiff's favor, the court, among other things, said:

"If the action below was merely one *in personam*, the judgment cannot be maintained; for, in such an action the court could acquire no jurisdiction to render judgment without personal service on the defendant, or appearance by him in the action. But if it may properly be regarded as an action *in rem*, the court could undoubtedly obtain jurisdiction, by constructive service, to appropriate the property of the defendant, situated in the county where the action was brought, to the purposes of the action, though it could render no personal judgment on which a general execution could issue, or an action against him be maintained. It is contended this action was of the former character, because, prior to the rendition of any decree for the subjection of the property to the support of the plaintiff and child, it became necessary for the court to inquire into and determine the existence of the marriage relation, the residence of the plaintiff, the ground alleged for the

allowance of the alimony,.and the amount to be awarded.
Cases are cited to sustain this contention which hold that,
though ex parte divorce may be obtained on construc-
tive service, alimony cannot be decreed unless the defend-
ant appear, or has been served with process within the
jurisdiction of. the court. So far as we have examined
them, these do not appear to be cases where the defend-
ant had property within the jurisdiction of the court,
which it was sought to reach and have appropriated to
the support of the wife, but those only where a general
personal judgment for alimony was rendered, or sought.
It was said by Mr. Justice FIELD, in Pennoyer v. Neff,
95 U. S. 714, 723 (24 L. Ed. 565), that: 'The State,
through its tribunals may subject property situated
within its limits, owned by nonresidents, to the payment
of the demand of its own citizens against them; and the
exercise of this jurisdiction in no respect infringes
upon the sovereignty of the State where the owners are
domiciled. Every State owes protection to its own citi-
zens; and, when nonresidents deal with them, it is a le-
gitimate and just exercise of authority to hold and ap-
propriate any property owned by such nonresidents to
satisfy the claims of its citizens. It is in virtue of the
State's jurisdiction over the property of the nonresi-
dents, situated within its limits, that its tribunals can in-
quire into that nonresident's obligations to its own citi-
zens, and the inquiry can then be carried only to the
extent necessary to control the disposition of the prop-
erty. If the nonresident have no property in the state,
there is nothing upon which its tribunals can adjudi-
cate. . . .

"The plaintiff in her action below did not seek, nor
obtain, a personal judgment against the defendant. She.
and her child were residents of the county in which her
suit was brought. The specific property she asked to
have subjected to her support was situated in that
county, and she sought no other relief than its appropria-
tion, or such part of it as might be necessary for that
purpose, in fulfillment of the defendant's obligation to
her in that behalf. The action and judgment were sub-

stantially *in rem,* in the sense that their direct object was to reach and dispose of property within the jurisdiction of the court.''

In Wesner v. O'Brien, 56 Kan. 724, loc. cit. 728, 44 Pac. 1090, 1092, in an action for divorce and alimony, where, as here, constructive service was had upon the nonresident husband, it is said:

''A court has no authority to render a judgment *in personam* without obtaining jurisdiction of the person of the defendant. Here, however, the land was brought within the control of the court in what was substantially a proceeding *in rem.* The complaining wife was here; the land sought to be subjected to alimony was here. . . . It was necessary for the support of the wife, who was seeking a divorce, and the law provides that alimony may be awarded in such cases. The land was subject to the laws of the State and was within the reach of the proceedings and process of its courts. In such a case, we think the court has power, not only to terminate the marriage relation, but to fix the custody and control of the children of the marriage who are before the court, and to appropriate as alimony any real property of the defendant within its territorial jurisdiction.''

In Blackinton v. Blackinton, 141 Mass. 432, 5 N. E. 830, the wife instituted a proceeding seeking, among other things, an allowance for the support and maintenance of herself and minor child out of the husband's property within the jurisdiction, he being a nonresident and served by publication, under a statute providing that, ''if a husband fails, without just cause, to provide suitable support for his wife, or deserts her,'' the probate court may make orders ''relative to the support of the wife and the care, custody and maintenance of the minor children of the parties.'' Touching the jurisdiction of the court below, acquired by constructive service upon the defendant, the court, through HOLMES, J., (now Mr. Justice HOLMES of the United States Supreme Court) said:

''Assuming that the probate court has jurisdiction of the subject-matter in such a case, we are of opinion

194 M. A.—32

that its right to proceed is not confined to cases where personal service can be made upon the respondent within the State. The jurisdiction in divorce is not confined to such cases. . . . In like manner, so far as the petitioner seeks a decree protecting her person, and giving her the custody of her child now living in this commonwealth, we have no doubt that the statute confers power upon the probate court to make it. The question whether it also confers power to order the payment of money for maintenance is more difficult, but, in the opinion of a majority of the court, must be answered in the same way. . . .

"The whole proceeding is for the regulation of a status. The incidents of that status are various—some concerning the person, some concerning the support, of the petitioner or her child. The order to pay money is not founded on an isolated obligation, as in a case of contract or tort, but upon a duty which is one of those incidents. The status, considered as a whole, is subject to regulation here, although it involves relations with another not here, because such regulation is necessary rightly to order the daily life, and to secure the comfort and support, of the party rightfully living within the jurisdiction."

In Hanscom v. Hanscom, 6 Colo. App. 97, 39 Pac. 885, the suit was for alimony against a nonresident husband having property in the jurisdiction, and the complaint averred fraudulent conveyances made by the husband to defeat the plaintiff's right. After a thorough discussion of the questions involved, the court held that the suit could be maintained, and that constructive service was sufficient to support the decree.

In Rhoades v. Rhoades, 78 Neb. 495, 111 N. W. 122, it was held that a court of equity will entertain an action for maintenance (or alimony) and. grant the same as against property situated in the jurisdiction, appropriating the same to payment thereof, where the defendant husband has deserted the plaintiff and become a nonresident, and service is had before him by publication, citing Benner v. Benner, supra; Blackinton v. Blackin-

ton, supra; Hanscom v. Hanscom, supra; Pennoyer v. Neff, supra; and other authorities.

In Murray v. Murray, 115 Cal. 266, 47 Pac. 37, the suit was one for maintenance, wherein it was sought to have fraudulent transfers of the nonresident husband's real property, within the jurisdiction, set aside, and to have the same subjected to the payment of the wife's claim. It was held that the trial court had jurisdiction to afford the relief sought, upon service by publication.

In Harshberger v. Harshberger, 26 Iowa, 503, the wife prayed for divorce and alimony, and that the latter be decreed a lien on lands of the nonresident husband in the jurisdiction specifically described. The service was by publication. The court, affirming a decree in the wife's favor below, said:

"Alimony is an incident to divorce, and can only follow it, and the statute authorizing service of notice by publication in an action for divorce cannot fairly be construed to limit the power of the court, where service is thus made, to simply granting a divorce. It has jurisdiction of the cause, and may make all proper orders as to alimony, the custody of children, etc., which are incident to the divorce. Of course, its orders as to alimony, when the service is by publication, would be binding only so far as the subject-matter out of which the alimony thus allowed was within its jurisdiction. If the court, upon such service, should render a judgment for so many dollars as alimony, such judgment would not be held conclusive, and, perhaps, not even valid in a foreign jurisdiction."

Other authorities directly or indirectly supporting this view might be discussed, but to do so would serve no useful purpose. We are of the opinion that our own statutes relative to divorce and alimony and constructive service are broad enough to authorize our courts to entertain a proceeding of a character such as this; and that, if need be, equity will supply remedies necessary to subject the husband's property to the support and maintenance of the wife and minor children. [See Benner v. Benner, supra; Rhoades v. Rhoades, supra; Murray

v. Murray, supra; Hanscom v. Hanscom, supra.] It is true that equity ordinarily acts *in personam,* and such was the early conception of equity jurisdiction. But in modern practice, courts of equity frequently afford relief in proceedings substantially *in rem,* where the exercise of such jurisdiction is essential to the granting of adequate relief to the complainant, as in Murray v. Murray and Hanscom v. Hanscom, supra. And our courts have upheld jurisdiction in suits of such character obtained through service by publication under our statute. [See Adams v. Cowles, 95 Mo. 501, 8 S. W. 711, 6 Am. St. Rep. 74; Clark v. Brotherhood of Locomotive Firemen, 99 Mo. App. 687, 74 S. W. 412.]

II. In some of the cases from other jurisdictions to which we have referred above, the courts have deemed it essential to the rendition of a judgment of the character involved that the property thus sought to be appropriated to the wife's claims be brought within the control of the trial court in the first instance by seizure in some manner agreeable to the practice of the court. But it is held that:

"Any authorized act by which the court takes charge of property, or asserts its control over it, is sufficient within the meaning of the rule, for the purpose of jurisdiction." [Benner v. Benner, supra; Murray v. Murray, supra; Rhoades v. Rhoades, supra.]

And in Wesner v. O'Brien, supra, the judgment was sustained, though no steps were taken to bring the property within the control of the court otherwise than by the commencement of the suit and publication of the notice. [See, also, Benner v. Benner, supra, 63 Ohio St. loc. cit. 277, 58 N. E. 569.]

In the case before us, the appointment of a receiver is prayed, but we think this unnecessary, since the suit proceeds, as *in rem,* against the property which is thereby directly brought within the control of the court.

III. But granting that the right to thus proceed against the property of a nonresident husband should be sustained, in the case before us there is the question

of the propriety of permitting the plaintiff to reach, in this action, property which the husband has attempted to convey to his codefendant.

In Hanscom v. Hanscom and Murray v. Murray, supra, the right to set aside fraudulent conveyances of the husband, in the same action, was sustained.

But it must be borne in mind that we have no jurisdiction on appeal if the case is one directly involving the title to real estate; and it is our duty to look to the question of our own jurisdiction.

In her petition plaintiff charges that the property described belongs in fact to the defendant husband, though the record title is in his codefendant. But it appears that it is not sought to set aside any conveyances, or directly adjudicate the question of title, but to appropriate for the purposes aforesaid whatever interest the defendant husband may have in such property. In this view, the appeal appears to be within our jurisdiction. A judgment awarding plaintiff alimony as a special lien against the property, charging it with the payment thereof, to the extent at least of the husband's interest therein, does not operate, *ipso facto,* to divest any one of title, but merely fastens a charge upon the husband's interest in the property. And though such judgment becomes a charge upon the land, and is not *in personam,* it is nevertheless capable of being fully satisfied by the payment in money of the alimony awarded, discharging the land from the lien thereof. [See Kennedy v. Duncan, 224 Mo. 661, 123 S. W. 856.]

Whatever interest, legal or equitable, that the defendant husband may have in property within the jurisdiction of the circuit court, may, in our opinion, be subjected to its judgment respecting an award of alimony to plaintiff. And if there be any formal defects in plaintiff's petition herein, they are inconsequential at this stage of the case.

IV. We are thus led to the conclusion that it was within the power, and was the duty, of the court below to grant plaintiff relief in this action by way of a suitable award of alimony, charging the real property of her

nonresident husband within the jurisdiction with the payment thereof. It is not necessary to state that such judgment, not being personal or general in its nature, must, so long as it remains unsatisfied, spend its force alone upon the property within the court's jurisdiction, and can otherwise have no vitality.

But the question arises as to the jurisdiction of the circuit court of the city of St. Louis to affect by its decree that portion of the property described in the petition lying just beyond the city limits and situated in the county of St. Louis.

Section 1753, Revised Statutes 1909, provides that:·

"Suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county within which such real estate, or some part thereof, is situate."

A part of the real estate sought to be affected does in fact lie in the city of St. Louis, where the suit was instituted. But the plaintiff, by virtue of section 2371, Revised Statutes 1909, was compelled to institute the divorce proceeding in the city of St. Louis, wherein she resides; and alimony, under our practice, is an incident to divorce, and separate actions for alimony could not be instituted in different counties. If the remedy here invoked is to be held available in proceedings of this character, then, all things considered, the circuit court, whose final process runs throughout the State, must, in our opinion, be regarded as clothed, by virtue of our divorce laws, with jurisdiction and authority to reach by its decree property anywhere within the State, whereby to fully adjust the rights of the parties to the marriage contract to property within this State and subject to its laws.

In Wesner v. O'Brien, supra, 56 Kan. loc. cit. 729, 731, 44 Pac. 1090, 1092, anent this question, it is said:

"The jurisdiction depends upon the domicile of the plaintiff, and not upon the location of the land sought to be appropriated as alimony. It must be brought in the county of which the plaintiff is a resident, and cannot be maintained unless the plaintiff has been an actual resident of the State in good faith for one year before

the filing of the petition.   [Civil Code, section 640.]   Alimony is an incident of the divorce proceeding, and, when the action is rightfully brought, any land within the operation of the laws of the State, and which has been brought within the control of the court, may be appropriated as alimony.   The ancillary step in a divorce proceeding is not to be treated as an action brought to recover real estate or to determine an interest therein, and is not governed by the provisions of the Code directing that such actions shall be brought in the county wherein the land or some part thereof is situated.   The divorce action may be brought where the plaintiff resides, and only one action is necessary, and when it is properly brought there is drawn to the court and within its jurisdiction any lands of the defendant sought to be appropriated as an incident of the divorce, wherever they may be situated within the State.''

And to the same tenor and effect is the decision of the Supreme Court of Iowa in Harshberger v. Harshberger, supra, where the real estate sought to be reached was wholly situated in a county other than that wherein the action was instituted.

V. Naturally, we hesitate to pass judgment upon a question of this importance as to which our Supreme Court has not definitely spoken.   That the law ought to afford a wife, under such circumstances as are here present, relief against the property of her absconding husband, within the State, we think cannot be doubted. And we believe that to afford her such relief is consistent with our law as it is now written.

We do not agree with the learned trial judge, for whose opinion we have great respect, that a judgment for alimony is, in the very nature of things, a personal judgment.   The action for divorce is a proceeding *sui generis*.   [Mangels v. Mangels, 6 Mo. App. 481.]   It deals with a status, one incident of which is the husband's obligation to support and maintain the wife.   And viewing our divorce law broadly, and as intended to afford full means for the regulation of that status, and the enforcement of the obligation of the husband thereunder

to the wife domiciled in this jurisdiction, it would not seem to be illogical, or contrary to the spirit of our law, to make the husband's property within the jurisdiction respond to the fulfillment of such obligation, in an appropriate proceeding to reach it and apply it, so far as may be just and proper, to make provision for the necessities of the abandoned wife.

Our order herein will, accordingly, be that the judgment below be reversed, and the cause remanded to be proceeded with in accordance with the views expressed above. NORTONI, J., concurs. REYNOLDS, P. J., dissents, and as he deems the decision herein to be contrary to the decision of the Supreme Court in Moss v. Fitch, 212 Mo. 484, 111 S. W. 475, 126 Am. St. Rep. 568, and State ex rel. v. Blair, 238 Mo. 132, 142 S. W. 326, he requests that the cause be certified to the Supreme Court for determination by that tribunal. It is therefore so ordered.

## DISSENTING OPINION.

REYNOLDS, P. J.—I find myself unable to agree to the conclusion arrived at by my learned associates in this case.

The action appears to have been originally brought by plaintiff against Fred E. Chapman for divorce, alimony, etc. After several writs of summons had been returned "not found" as to Fred E. Chapman, it seems that an amended petition was filed, making Walter Chapman a codefendant. As my associate has set out the substance of this amended petition and its prayer, it is not necessary to here repeat it at length. I add to the summary of this amended petition that it charges that Fred E. Chapman, the husband, took the deeds and titles to the real estate described, and which is sought to be here sequestered, in the name of his brother, the defendant Walter Chapman, who, it is averred, paid nothing for it and who at all times held and still holds the bare legal title thereto in trust for plaintiff's husband, who, it is alleged, is the absolute and real owner thereof, and that as far as plaintiff had been able to ascertain,

her husband Fred E. Chapman has no other property. Charging that the defendant Fred E. Chapman has absconded and absented himself from his usual place of abode in this State and has concealed himself so that the ordinary process of law cannot be served upon him, and that the defendant Walter Chapman is a nonresident of this State and cannot be served therein, and that his present whereabouts are unknown, an order for publication is asked for as to each of these defendants. The prayer of the amended petition is that plaintiff be divorced from the bonds of matrimony contracted with Fred E. Chapman, and that the court adjudge to her alimony in gross for her support and maintenance and alimony *pendente lite,* as also attorney's fees, suit money and costs, and further that the court establish such money judgment as may be so rendered in favor of plaintiff, as a lawful right, claim and demand against the real estate described and which, as it is averred, is within the jurisdiction of the court, and that the court enforce the judgment by sequestration of the property described, or by such other lawful ways and means according to the practice of the court; that a receiver be appointed to take charge of the real property described and that the defendants be enjoined from selling or in anywise disposing of or encumbering or injuring the property, that plaintiff be restored to her former name, and for such other and further relief, etc.

The order of publication follows the amended petition and notifies the defendants to appear in court on the first Monday of the October term, 1915. At the October term default and inquiry was duly granted as to both defendants and at that term the cause was heard and continued to the December term, at which term the court rendered a judgment and decree granting plaintiff a divorce and restoration of her former name but declined to award alimony as prayed, and dismissed the cause as to the defendant Walter Chapman. From this judgment of the circuit court plaintiff has appealed to our court.

It might be sufficient for the expression of my views as to the law of this case to present the opinion of the

trial judge, which has been brought up by appellant, as it is evidently the result of careful consideration by a judge of long service on the bench and at the bar of this State. I content myself with attaching that opinion as an appendix or note to this, adding a few remarks of my own.

In Doyle v. Doyle, 26 Mo. 545, loc. cit. 549, our Supreme Court held that "the extent of the jurisdiction of our courts in matrimonial cases is limited by statute." So that court again held in McIntire v. McIntire, 80 Mo. 470, loc. cit. 472.

In Mangels v. Mangels, 6 Mo. App. 481, our court, in a learned opinion by Judge Bakewell, held that under our statute divorce was a proceeding *sui generis;* neither according to common law or to chancery proceedings: a strictly statutory proceeding.

In Sharpe v. Sharpe, 134 Mo. App. 278, loc. cit. 281, 114 S. W..584, our court held that all the legislation we have on the subject of divorce is grouped in chapter 20, Revised Statutes 1899, under the head of "Divorce, Alimony and Custody of Children." This is now article III, chapter 22, sections 2370 to 2381, both inclusive. Revised Statutes 1909.

Our court further held in the Mangel case, supra (6 Mo. App. loc. cit. 485), that:

"There can be no question that the particular provision in the Divorce Act (referring to what is now section 2371, Revised Statutes 1909) must be taken to restrain the general provision of the Practice Act."

Herein, says Judge BAKEWELL, our law differs from that of New York.

It follows that we must look alone to our divorce statute for the procedure in this case. Finding no warrant in that statute for engrafting on an action for divorce one belonging alone to equity, that is, an action to subject real estate to a lien and to affect title to real estate, I am unable to see any ground upon which that part of the relief asked can be bottomed.

I may here say, parenthetically, that title to real estate being involved, I do not see how our court has

any jurisdiction of this appeal. However, as the case is to be certified to the Supreme Court, that question need not be now considered.

I am, as I think, warranted in my conclusion on the case by a consideration of the decisions of our Supreme and appellate courts.

At an early day in the jurisprudence of our State, it was held that a judgment *in personam* for a debt against a nonresident of our State, obtained upon a mere order of publication and without the service of any process within this State, is a judgment without process and is void. [See Smith v. McCutchen, Garn., 38 Mo. 415, decided in 1861.] This has been steadily adhered to and enforced by our Supreme Court in many cases; as see Wilson v. St. Louis & S. F. Ry. Co., 108 Mo. 588, 18 S. W. 286; Moss v. Fitch, 212 Mo. 484, 111 S. W. 475; State ex rel. McIndoe et al. v. Blair, Judge, 238 Mo. 132, 142 S. W. 326. So, too, by our court, as see Hedrix v. Hedrix, 103 Mo. App. 40, 77 S. W. 495, and Elvins v. Elvins, 176 Mo. App. 645, 159 S. W. 746.

Moss v. Fitch, supra, was a proceeding very much like that attempted here.

In that case Judge GRAVES has said (212 Mo., loc. cit. 497, 111 S. W. 477):

"To determine just where the plaintiff stands in this case we take up two preliminary questions. First, what is the status of the judgment for alimony under which the plaintiff, on execution sale, purchased the property? To our mind, whatever may be the rule in other States, the rule is firmly established in this State that no personal judgment can be had on process of this State, executed outside of the State, or upon service by publication."

That learned judge reviews with his usual care the leading cases of the State which establish this proposition. It is true that in his opinion Judge GRAVES (212 Mo., loc. cit. 499, 111 S. W. 475) quotes from Ellison v. Martin, 53 Mo. 575, loc. cit. 578, what is really a dictum of Judge ADAMS, to the effect that "whether property can be brought before the court by describing it in the

petition, and demanding a judgment *in rem* for alimony, is a question'' the court was not then called upon to decide. The fact that this remark is made by Judge ADAMS in the Ellison case, by no means gives it the force of a decision, nor does the inclusion of it in a quotation from the Ellison opinion by Judge GRAVES even imply that he had adopted it as a matter of decision.

In State ex rel. v. Blair, Judge, supra, a case in which it was attempted to reach funds belonging to one Kennedy, a nonresident, who had not been personally served with process in this State in the proceeding against parties summoned as his garnishees, it is said (238 Mo. loc. cit. 152, 142 S. W. 331):

''Before it can be legally said that Kennedy owes or is indebted to the Florence Company, in any sum whatever, for unpaid shares of stock, held by him, there must be a trial had to determine that question, which cannot be had upon constructive service by publication, for the obvious reason that when such a judgment is rendered, if ever, against Kennedy, it must be a personal judgment against him; and under the statute mentioned there is no other means by which that question can be determined.''

Citing a number of cases, Judge WOODSON, who wrote the opinion in that case, continues (238 Mo. loc. cit. 153, 142 S. W. 332):

''We therefore hold that the circuit court of Jasper county acquired no jurisdiction over the person of Kennedy, and for that reason the question as to whether or not he was indebted to the Florence Company for shares of stock held by him, cannot be adjudicated in this case, and for that reason the motion to quash should be sustained.''

The shares of stock were in a corporation of this State and within the jurisdiction of the court.

Our own court, in two notable cases, namely, Hedrix v. Hedrix, supra, and Elvins v. Elvins, supra, the former opinion cited by Judge Graves approvingly in Moss v. Fitch, supra, the latter referred to by Judge SHIELDS in his opinion in the case at bar, the Hedrix case arising

under our divorce statute, the Elvins case under our wife maintenance statute, expressly holds that a personal judgment based upon service beyond the boundaries of the State or by publication against one not at the time a resident and found within the State, cannot be made the foundation for a personal judgment. In Hedrix v. Hedrix, supra (103 Mo. App. loc. cit. 46, 77 S. W. 497), our court said:

"Whatever views at times may have prevailed in other States (2 Freeman, Judgments [4th Ed.], sec. 567), the courts of Missouri early recognized the principle, that the authority of a judicial tribunal was confined to the territorial limits of the State establishing it, and the line of decisions in this State recognizing that involuntary jurisdiction could be acquired of the person of defendant only by service of process upon him within the limits of the State, is unbroken."

Hence it is held that the judgment for alimony rendered in a divorce case in which there had been no personal service within this State, was void and would not sustain a proceeding in garnishment. A multitude of cases are cited for this.

In Elvins v. Elvins, supra, the wife with an order for maintenance entered in an action in which there had been no service of process on the defendant within our State, it is said (176 Mo. App. loc. cit. 651, 159 S. W. 748):

"It must be conceded that, if the order here appealed from is purely a judgment *in personam,* then the court can acquire jurisdiction to make the order only by personal service within the limits of this State; for it is well settled that service by publication, or personal service beyond the limits of the State, will not support a judgment *in personam.*"

Many authorities are cited in support of this proposition.

In the case at bar, a proceeding for divorce in which there has been no personal service whatever and no appearance by the defendants it is sought to obtain a money judgment against the husband for alimony *pendente lite*

and in gross and suit money, on substituted service. Such a judgment, as we have seen, has been uniformly held in our State to be void. It is then sought to enforce this void judgment against real property standing in the name of another but said to be the property of the husband. To do the latter, it would be necessary for the court, in this statutory action for divorce, to declare void and wipe out deeds made at the instance of the husband to his codefendant, but charged to be of the realty of the husband, and to enforce against this realty a void judgment. As has been so aptly said by Judge GRAVES at page 501 of 212 Mo., at page 479 of 111 S. W. (126 Am. St. Rep. 568), in Moss v. Fitch, supra:

"No process issued by the courts of this State and served upon the party defendant in another State can be the basis of a personal judgment. And this is true whether the party in fact is a citizen of this State or of another State."

To my mind the attempt to render a money judgment and then enforce it against real estate not even standing in the name of the husband but charged to be his in equity, is so absolutely illogical and so contrary to a long line of decisions in our State, that I am unable to appreciate the line of reasoning by which it is sought to be sustained.

It is admitted that the vital question here presented has never been distinctly before any of our appellate courts. While that is no conclusive reason against it, a failure of the bar and courts of our State to resort to such a proceeding in a divorce case, surely is of some weight, when we realize that for almost a century of our existence as a State and with the law of divorce always present in our State and construed in a multitude of cases by our appellate courts, no such position has ever been taken by counsel or sustained by our courts. As was said by the Supreme Court, when our Special Jury Law was attacked as unconstitutional, "Such a view ought not to be lightly considered or adopted." [Eckrich v. St. Louis Transit Co., 176 Mo. 621, loc. cit. 637, 75 S. W. 755, 759.] As this case was presented in the trial

court as also before us *ex parte,* neither of the defendants appearing or represented in either court, we should be slow in making such a radical departure from what I think is a settled rule.

As said by our courts in several of the cases cited, we must look to our own laws for guidance in matters of divorce; hence I have not considered cases cited from other jurisdictions.

Deeming the decision of the court contrary to the previous decisions of our Supreme Court and of our own court in the cases which I have cited, especially those of Moss v. Fitch, 212 Mo. 484, 111 S. W. 475, and State ex rel. v. Blair, 238 Mo. 132, 142 S. W. 326, I respectfully ask that this cause be certified and transferred to the Supreme Court for its determination.

The opinion of Judge SHIELDS, above referred to, is as follows:

"This is a suit for divorce. After several summons were issued on which the returns were 'not found,' the plaintiff filed an amended petition wherein she set up the grounds for divorce and the jurisdictional averments, and then averred that she was wholly without means of support, and that her husband, Fred E. Chapman, purchased and paid for with his own money certain real estate in city block 3788 of the city of St. Louis, and certain other real estate in the county of St. Louis, Mo., but took the deeds and title to said real estate in the name of his brother, defendant Walter Chapman, who paid nothing therefor, and who at all times held and still holds the legal title thereto in trust for plaintiff's said husband, the absolute and real owner thereof; and that, so far as plaintiff has been able to ascertain, her said husband has no other property; that her husband has absconded and absented himself from his usual place of abode in this State and has concealed himself so that the ordinary process of law cannot be served upon him; that diligent efforts have been made to find the defendant Fred E. Chapman and serve him with summons, but has failed; and that the sheriff made the returns 'not found;' that the other defendant, Walter Chapman, is a nonresident

of the State of Missouri and cannot be served in this State, in the manner prescribed by law; that plaintiff does not know his present whereabouts, nor how he could be personally served. Plaintiff therefore prays an order of publication against both defendants, and that plaintiff be divorced from the bonds of matrimony contracted as aforesaid with defendant Fred E. Chapman; that the court will allow to her permanent alimony in gross for her support and maintenance, and alimony *pendente lite* and for attorney's fees and suit money and costs, and enforce and establish the same as a lawful right, claim and demand to and against said real estate within the jurisdiction of this court, and enforce the performance of the judgment by sequestration of said property and such other lawful ways and means as is according to the practice of this court; that a receiver be appointed to take charge of said property; that the defendants be enjoined from selling or in any wise disposing of or incumbering or injuring said property; and that plaintiff be restored to her former name, Fannie P. Price, and to make such further orders and judgments touching the premises as may be proper. The petition has the usual oath in divorce cases as to collusions, etc.

"An order of publication was issued against the husband, Fred E. Chapman, and also his brother, Walter Chapman, who was alleged to hold the property for her husband. The order of publication not only set out the bringing of the divorce suit and the grounds for divorce, but also the fact that plaintiff sought to make whatever alimony might be allowed in gross a lien on the property described in the petition. The case was heard, and the plaintiff introduced evidence showing that she was the injured and innocent party, and that the conduct of her husband was such as under the law entitled her to a divorce and the restoration of her maiden name.

"The only question in the case is whether or not the plaintiff can obtain a judgment for alimony in gross and have the same made a special charge on the property held by Walter Chapman, as the property of her husband, Fred E. Chapman. I think the preponderance of

the evidence shows that the property described in the petition, although in the name of defendant Walter Chapman, belongs to the husband, Fred E. Chapman. Both pieces of property were incumbered by deeds of trust. The trustees and holders of each are not made parties to the suit. Counsel for plaintiff cites cases from the Supreme Courts of other States showing that, where the parties defendant are brought in by constructive service, the court may grant a divorce with alimony in gross and make the same a lien, not only on the real estate within the jurisdiction of the court, but property in other counties of the State. [Benner v. Benner, 63 Ohio St. 220, 58 N. E. 569; Hanscom v. Hanscom, 6 Colo. App. 97, 39 Pac. 885; Wesner v. O'Brien, 56 Kan. 724, 44 Pac. 1090, 32 L. R. A. 289, 54 Am. St. Rep. 604; Blackinton v. Blackinton, 141 Mass. 432, 5 N. E. 830, 55 Am. Rep. 484.]

"The question is: Can this be done in the State of Missouri? It is the law in this State that divorce proceedings are purely statutory, and is included in sections 2370-2381, R. S. 1909. [Sharpe v. Sharpe, 134 Mo. App. 278, 114 S. W. 584.] An examination of this statute does not show any authority to render a judgment for alimony in gross and charge it against specific property of the husband. And this perhaps is one of the reasons why the Court of Appeals and the Supreme Court have declined to pass on this question in the cases before them. In the case of Hedrix v. Hedrix, 103 Mo. App. 40, 77 S. W. 495, the court held that personal service beyond the limits of this State, under section 582, R. S. 1889, does not authorize a personal judgment, and that a judgment for alimony in a divorce proceeding, which was a personal judgment, rendered upon such service, is void; the court saying on page 46 of 103 Mo. App. 77 S. W. 497:

" 'In the opinion of this court, a true and correct interpretation of section 582 of the statute does not contemplate nor attempt to authorize, nor does it purpose a personal judgment based upon service of process on defendant beyond the boundaries of the State of Missouri. Whatever views at times may have prevailed in other

States (2 Freeman, Judgments [4 Ed.], sec. 567), the courts of Missouri early recognized the principle that the authority of a judicial tribunal was confined to the territorial limits of the State establishing it, and the line of decisions in this State recognizing that involuntary jurisdiction could be acquired of the person of the defendant only by service of process upon him within the limits of the State is unbroken. [Smith v. McCutchen, 38 Mo. 415; Wilson v. Railway, 108 Mo. 588; Latimer v. Railway, 43 Mo. 105; Ellison v. Martin, 53 Mo. 575.] The case of Ellison v. Martin, 53 Mo. 575, differed from the case at bar only in the respect that service was had upon the defendant by publication, in lieu of the method of personal service now substituted by statute, and resorted to herein. The judgment for alimony therein was held void, as was the title obtained by execution sale thereunder, and the court in turn holds that the Legislature never contemplated that general judgments might be rendered merely on publication of notice without appearance of the defendant. Alike on principle and authority the judgment for alimony in the divorce proceeding was void, and the garnishment writ was rightly quashed, and the judgment of the lower court is affirmed.'

"In the case of Elvins v. Elvins, 176 Mo. App. 645, 159 S. W. 746, the court held that service by publication or personal service beyond the limits of the State will not support a judgment *in personam;* that, while a divorce suit is a proceeding *in rem* (the marriage status constituting the *res*), a personal judgment for alimony cannot be supported by constructive service upon the defendant; that an order for support and maintenance *pendente lite* cannot be made and enforced without determining the jurisdiction of the court to make such an order on constructive service, since the question of jurisdiction underlies the power of the court to make and enforce any order affecting the rights of the defendant.

"The court says, on page 651 of 176 Mo. App., on page 748 of 159 S. W.:

" 'It must be conceded that, if the order here appealed from is purely a judgment *in personam*, then the court can acquire jurisdiction to make the order only by personal service within the limits of this State; for it is well settled that service by publication, or personal service beyond the limits of the State, will not support a judgment *in personam*' citing many cases.

"The court then refers to the claim of respondent's counsel in that case that the court may acquire jurisdiction upon service by publication as to the property of a nonresident husband situated within the jurisdiction of the court and reviews cases from other States on that subject which are relied on by plaintiff in the case at bar to sustain his contention, and, after reviewing the same, the court says, on page 655 of 176 Mo. App., on page 749 of 159 S. W.:

" 'There appears to be no authority in this State to support respondent's position. In Ellison v. Martin, 53 Mo. 575, it is remarked: "Whether property can be brought before the court by describing it in the petition and demanding a judgment *in rem* for alimony is a question we are not now called upon to decide." We are pointed to no case in this State in which a wife has attempted to thus proceed *in rem* against the property of a nonresident husband, to appropriate such property to the payment of alimony or maintenance.'

"This question came before the Supreme Court in the case of Moss v. Fitch, 212 Mo. 484, 501, 111 S. W. 475, 479, and after a full discussion of the case and a review of the Missouri cases on the subject the court says:

" 'So that we repeal that, whatever may be the holdings elsewhere, our court places the acquisition of jurisdiction upon which a personal judgment can be rendered upon the fact of personal service of the party with process in this State. In other words, no process issued by the courts of this State and served upon the party defendant in another State can be the basis of a personal judgment. And this is true whether the party in fact is a citizen of this State or of another State. To be more explicit, when our process crosses the State line it loses

its vitality as an instrument upon which a personal judgment can be entered. We are cited to the case of Hamill v. Talbott, 72 Mo. App. 22, and the same case, 81 Mo. App. 210, from the Kansas City Court of Appeals. There are some observations in these two opinions which are at variance with the views heretofore announced by this court and the St. Louis Court of Appeals, supra. To the extent that they announce a different view, they are and should be overruled. In the case at bar there is no sufficient evidence to show that Mills entered appearance or otherwise submitted to the jurisdiction of this court. From this it follows that plaintiff's judgment for alimony and all proceedings thereafter as to the execution and sale were absolutely void, and she acquired no title to the land by reason thereof.'

"Turning to the case of Hamill v. Talbott, 72 Mo. App. 22, which is thus overruled by the Supreme Court, we find the court held: Where the service on a defendant is constructive, and though he at the time is absent from the State, yet, if he is a citizen of such State, a personal judgment may be taken against him notwithstanding there was no personal service.

"Now, if the Supreme Court overrules the case of Hamill v. Talbott, 72 Mo. App. 22, and 81 Mo. App. 210, which held differently from the universal holdings of the Supreme Court as to constructive service, I do not see how the mere attempting to charge property of the defendant husband with alimony in gross on constructive service could be held valid.

"In other words, the settled law of the State of Missouri is that no judgment for alimony can be rendered against a defendant who is brought into court by constructive service, and such has been the law for many years.

"The plaintiff in the case at bar asks 'that the court will adjudge to her permanent alimony in gross for her support and maintenance and alimony *pendente lite* and her attorney's fees and suit money and costs, and enforce and establish the same as a lawful right, claim, and demand to and against said real estate within the jurisdic-

tion of this court and enforce the performance of the judgment by sequestration of said property and such other lawful ways and means as is according to the practice of the court;' that a receiver be appointed and defendants be enjoined from selling said property, etc. In other words, the court is asked to render a judgment for alimony in gross, which in the very nature of things must be a personal judgment, and cannot be upon constructive service, and then make it a charge against said real estate of the husband which said property is in the name of the husband's brother who is also brought into court on constructive service.

"I also have very serious doubts whether or not a petition asking that alimony shall be declared a lien on defendant's property in the hands of another can be joined with an ordinary proceeding for divorce.

"If a divorce proceeding is purely statutory and the decisions of the court are that alimony cannot be allowed on constructive service, on what theory could the averment that the nonresident defendant had property in Missouri on which plaintiff seeks a lien overturn the settled law in this State?

"The judgment of the court will be, that the plaintiff have a decree of divorce against her husband, Fred E. Chapman, and the restoration of her former name; but, as the defendants are not in court by personal service in this State, no alimony can be awarded. Plaintiff's bill as to Walter Chapman is dismissed."